**STATE of Iowa, Appellee,**

v.

**Thomas HINSEY, Appellant.**

**No. 54851.**

Supreme Court of Iowa.

Sept. 19, 1972.

Eldon J. Winkel, Algona, for appellant.

Richard C. Turner, Atty. Gen., and Richard N. Winders, Asst. Atty. Gen., and Joseph J. Straub, Kossuth County Atty., for appellee.

LeGRAND, Justice.

On June 12, 1969, defendant and three others escaped from a county jail in Minnesota and made their way in a stolen car to Iowa, where a three-day crime spree terminated in the armed robbery of the Fareway Store at Algona, Iowa, during which one of the employees, Melvin Bay, was fatally shot.

This is the third appeal arising out of these events. The convictions of two of defendant's alleged confederates based on substantially the same evidence have been sustained. See State v. Cunha, 193 N.W. 2d 106 (Iowa 1972) and State v. Gilroy, 199 N.W.2d 63 (Iowa 1972).

In the present case defendant was convicted of murder in the perpetration of a robbery. He was also convicted of robbery with aggravation. He appeals from judgment sentencing him to life imprisonment on the first offense and 25 years in the penitentiary on the second. We affirm the trial court.

Defendant sets out 11 separate errors as grounds for reversal. We forego a de-

tailed recitation of the general facts since they are adequately set forth in State v. Cunha, supra. We will refer to specific facts as they become important in our consideration of the alleged errors.

Several of the issues raised by defendant are controlled by our decisions in the Cunha and Gilroy cases. We dispose of these matters first in Divisions I and II.

I. Defendant claims he was improperly restricted from examining the jury panel on voir dire concerning their knowledge of the result of the trial of Ronald Kelsey, who escaped from the Minnesota jail along with Cunha, Gilroy, and the defendant. Kelsey was acquitted on the charge of murder and convicted of armed robbery. According to the record, this strange verdict was reached because the jury misunderstood the forms of verdict submitted to them. Understandably defendant was hopeful that the knowledge of Kelsey's acquittal on the murder charge could be brought to the attention of the jury which was to determine his fate.

■ The State filed a motion asking that the jury examination be restricted in this regard, and the trial court entered an order directing that no mention be made of the result of the Kelsey trial in the examination of the prospective jurors. We considered this identical complaint in State v. Cunha, where the matter was resolved against that defendant. We reiterate what was said in the Cunha opinion (193 N.W. 2d at page 110), which we believe to be controlling on this appeal.

In Cunha we placed considerable reliance on the fact voir dire examination was not reported and we were therefore without a record upon which a finding of prejudice could be made. Here the jury examination was reported but, by stipulation, was not made part of the printed record— nor even part of the trial transcript. From this we must assume the voir dire developed nothing which would be helpful to defendant.

We hold defendant is not entitled to relief on this issue.

II. Defendant next argues his motion for a directed verdict should have been sustained because his conviction on both counts rests squarely on a determination by the jury that a robbery had been committed. Defendant argues elsewhere there is insufficient evidence to show he was a party to the robbery, but in his motion for directed verdict his claim is directed principally to the proposition there is no evidence that a robbery was committed by anyone. If this is true, defendant was entitled to a favorable ruling on his motion, since his conviction in each instance is sustainable only upon proof of the commission of a robbery.

■ This same argument was made in State v. Gilroy, supra, where the nature of the evidence supporting the commission of a robbery is discussed. It is true much of the evidence is circumstantial, and much of it depends upon admissions made by the various defendants in conversations subsequent to the robbery. However, what we said in State v. Gilroy is equally applicable here. The evidence considered in its light most favorable to the State—as it must be considered in ruling on a motion for directed verdict—presents a jury question on this issue. Our ruling in State v. Gilroy, supra, is decisive against defendant's contention. See also State v. Cunha, supra, 193 N.W.2d, pages 108–109.

■ III. Defendant urges error in the court's instruction relating to verbal declarations. The instruction given is similar to the one approved by the Iowa State Bar Association Uniform Instructions # 1.13. Defendant made no objection to this instruction at any time in the trial court. Under these circumstances there is nothing before us for review. State v. Schmidt, 259 Iowa 972, 980, 145 N.W.2d 631, 636 (1966).

■ We have, however, considered this complaint in our examination of defend-

ant's argument that he was denied a fair trial. We find no error in the instruction as given.

IV. Another objection questions the evidence of Robert L. Cramer, manager of the Fareway store, who testified concerning the amount of money missing immediately after the alleged robbery. This, too, is discussed at length in State v. Gilroy, supra.

■ However, in the present case defendant raises the issue somewhat differently. He insists Cramer's evidence was hearsay and not the best evidence because the cash register tapes and records were not produced. If there was any merit to this argument, it was later cured by the production of these records, which were made available to defendant for cross-examination and which supported the witness' testimony in every detail.

■ V. Defendant claims one of the witnesses, Patricia Ann Johnson, belatedly identified him at trial when she had previously been unable to do so. Certainly this witness' identification was questionable; but this raises a question of credibility, not admissibility. Defendant's counsel subjected the witness to a vigorous and searching cross-examination but was unsuccessful in his attempt to discredit her testimony. Having heard all the circumstances, the jury determined the factual issue against defendant. There is no basis for us to interfere on this ground.

Defendant cites Stovall v. Denno, 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and United States v. Wade, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) as supporting his argument. We find nothing there to help him under the circumstances disclosed by this record.

VI. Defendant challenges the admission of a conversation held between several of his alleged accomplices and two girls they had picked up in Waterloo. The conversation, according to the State, was held in defendant's presence and included statements connecting him to both the robbery and the murder for which he was later convicted.

■ We are satisfied the conversation was properly admitted under the circumstances existing here. Although not precisely in point on this issue, State v. Cunha and State v. Gilroy, to which we have already referred several times, also contain discussions dealing with this same conversation. In each instance it was held admissible against the particular defendant involved.

However, the questions raised on the present appeal are somewhat different. It is claimed the conversation should have been excluded unless defendant's silence or failure to deny the statements can be considered as an admission of their truth.

Defendant argues the circumstances do not justify such a conclusion for several reasons. He says that there is no showing he heard the conversation; that the witness who related it does not pretend to have heard the whole conversation and therefore none of it may be used; and that the statements cannot, in any event, be considered as admissions against him since the use of the pronoun "they", by which the comments made are connected to him, is ambiguous and may have referred only to the two parties who actually participated in it.

■ We have no quarrel with defendant's thesis, nor with the authorities admitted to support it. We agree that before silence may be considered as an admission against the party, in both civil and criminal cases, the statement must be made in his presence. Under circumstances which would ordinarily call for a denial. 29 Am.Jur.2d, Evidence, section 638, page 691, section 642, page 695; Jones on Evidence, Fifth Ed., sections 388–389, pages 722–726; 31 C.J.S., Evidence, section 294, page 1057; Doherty v. Edwards, 227 Iowa 1264, 1272, 290 N.W. 672, 676 (1940); State v. Cotton,

240 Iowa 609, 637, 33 N.W.2d 880, 896 (1948); Klever v. Elliott, 212 Or. 490, 320 P.2d 263, 265, 70 A.L.R.2d 1094 (1958); Annot. 80 A.L.R. 1235 (1932); Annot. 115 A.L.R. 1510 (1938).

However, defendant completely disregards the facts when urging this matter upon us. The record does not pose a question resulting from silence, as he would have us believe; rather it discloses his specific admission of the damaging material.

Paula Campbell testified she was with defendant when the disputed conversation took place just outside the automobile in which they were seated. He was closer to those outside than she. She related she heard either Cunha or Gilroy tell the girls they had held up a grocery store and shot a man. She then testified she asked defendant if it was true that "they had robbed a grocery store and shot a man." He replied that it was.

Not only does this testimony make defendant's argument about silence inapplicable, it also disproves his claim he did not hear the statements.

The other two objections—that *all* the conversation is not shown to have been heard and that the reference to "they" was ambiguous and did not necessarily include defendant—were clearly matters for jury determination. These matters undoubtedly were argued to the jury and it was for the jury, having heard all of the circumstances under which these statements were made, to give proper weight and credibility to them.

■ VII. Defendant also objects to the deposition testimony of Barbara Patterson concerning a conversation alleged to have taken place in her home at Mankato, Minnesota, at which time statements were made by Louis Cunha about a gun. The conversation had no specific connection with the subsequent robbery and murder committed in Algona at the Fareway Store. At best it would only establish defendant

knew Cunha had a gun, a fact defendant denies.

The objection to Barbara Patterson's testimony seems to be there is no showing it was made in defendant's presence or that he heard it. The witness first said defendant was not in the room when the statement about a gun was made. Later she changed her testimony to say that he was. Her story was perhaps inconsistent and unsatisfactory, but cross-examination failed to shake her final version of the incident.

Clearly the evidence was properly put to the jury for determination.

VIII. This brings up another complaint made by defendant concerning Barbara Patterson's deposition. Craig M. Beek, a special agent for the Iowa Bureau of Criminal Investigation, was present when it was taken, and defendant alleges he was unduly restricted in his cross-examination of this witness.

The controversy arises in the following manner. When the deposition was taken at the Algona Courthouse, Barbara Patterson first testified defendant was not present during a conversation about a gun the four young men had concealed in their stolen car.

This is the way the matter stood when the deposition was concluded. However, before defendant and his counsel left the building they were asked to return to the place where the deposition had been taken so that it could be reopened. Barbara Patterson was then asked again about this conversation, and she corrected her testimony by putting defendant at the scene when the talk about the gun took place.

At trial defendant's counsel sought to cross-examine Agent Beek about the resumption of the deposition after it had been declared closed. The trial court sustained an objection that this injected a "collateral issue" and was not proper cross-examination. Out of the presence of the jury, defendant's counsel stated his

purpose in cross-examining Agent Beek was to show the State reopened the deposition intending to impeach its own witness. No mention was then made of the objection which is urged here—that defendant wanted to show Barbara Patterson had been improperly persuaded to change her story. That has been first argued on this appeal.

The scope and extent of cross-examination lie largely within the discretion of the trial court. State v. Harrington, 178 N.W.2d 314, 316 (Iowa 1970); State v. Frommelt, 159 N.W.2d 532, 537 (Iowa 1968). However, that discretion should be exercised only after the right of cross-examination has been fully and fairly exercised. State v. Masters, 261 Iowa 366, 370, 154 N.W.2d 133, 136 (1967) and Eno v. Adair County Mutual Insurance Association, 229 Iowa 249, 258, 294 N.W. 323, 327 (1940).

We find no abuse of discretion in the ruling made. Whatever purpose the State had in mind in resuming the deposition after it had apparently been completed, we know of no rule which forbids a party from seeking to correct erroneous testimony by the witness who has given it, assuming no improper methods are used for that purpose.

Conceding that defendant would have been entitled to cross-examine Agent Beek to show Barbara Patterson had been improperly importuned to change her story, we hold defendant cannot announce at trial the specific reason for his cross-examination and then rely upon an entirely different one to upset an adverse ruling. The trial court ruled on the matter as it was presented to him. That ruling was correct. The trial court should not be expected to anticipate other reasons which apparently had not yet occurred to counsel.

Under the record now before us we hold there was no error in the ruling made.

IX. There is a second objection dealing with the cross-examination of Agent Beek. Defendant attempted to show the State had persuaded Ronald Kelsey to testify against defendant, presumably falsely. There was a strong suggestion Agent Beek had asked the Minnesota public defender, who at one time had represented Kelsey, to solicit his help in securing defendant's conviction. The witness was questioned about promises allegedly made to Kelsey in return for such testimony. On redirect examination, the witness was permitted to testify concerning the circumstances under which the Minnesota public defender had visited Kelsey. According to Agent Beek, the visits were at Kelsey's request to discuss the alleged poor representation he was then getting from his Iowa lawyer.

We hold it was proper for the State to rebut the claim of impropriety raised during Beek's cross-examination. The trial court carefully excluded statements made by Kelsey except those dealing specifically with this one matter. This ruling was within the trial court's discretion and the trial court properly limited the examination to the issue at hand—whether Kelsey's testimony had been obtained by improper and undue influence on the part of the State.

X. We come now to the novel argument that a written statement made by defendant should have been excluded because defendant had falsely stated the facts there set out. It is admitted to have been a voluntary statement made after the Miranda warnings had been given and after defendant had talked to his attorney.

He now says he was misled by the minutes of testimony into believing the State had a much stronger case against him than it was ultimately able to prove. This, he said, made it necessary for him to lie to defend himself against this "false" evidence.

The situation developed this way. The minutes of testimony showed that Mrs.

Johnson would identify defendant as one of the participants in a robbery at Spirit Lake shortly before the one involved in this appeal; that Mrs. Gerber would testify she identified defendant at a lineup shortly after the robbery at Algona; and that Mary Eileen Durst would place him at the scene of the Spirit Lake robbery.

Mary Eileen Durst was not called to testify, nor was the State required to produce her. State v. Christ, 189 Iowa 474, 483, 177 N.W. ·54, 58 (1920). We therefore make no further mention as to her.

We need not resort to those cases which allow wide latitude in the use of minutes. State v. Powell, 237 Iowa 1227, 1248, 24 N.W.2d 769, 781 (1946); State v. Miller, 259 Iowa 188, 196, 142 N.W.2d 394, 399 (1966). We find no material inconsistency between the minutes and the actual testimony. At trial Mrs. Johnson *did* identify defendant as one of the participants in the Spirit Lake robbery; and Mrs. Gerber *did* testify substantially as the minutes said she would. Both witnesses retreated considerably on cross-examination and were far less positive than on direct; but this only cast serious doubt on the credibility of the testimony.

Defendant would have us believe the minutes were purposely drawn to deceive defendant, both by reciting evidence it knew was not true and omitting facts favorable to him. We feel compelled to say these accusations are without a shred of support. Such reckless charges do nothing to enhance defendant's case on appeal.

XI. There remains for discussion one last issue. It deals with the testimony of three police officers concerning statements made by defendant at or shortly after his arrest that he hated policemen and all they stand for.

The admission of this testimony was error. The State attempts to justify it by saying it "showed defendant's state of mind." Perhaps so, but it did this on a matter totally irrelevant to the charge for which he was being tried. Defendant's general hatred of policemen, standing alone, could hardly be relevant evidence in his trial for robbing and shooting a storekeeper. However, for reasons hereafter stated, this error does not entitle defendant to relief.

Prior to trial defendant filed what he now calls a motion in limine, asking that this testimony be excluded. Actually his motion was designated a motion to suppress. However, whether it is called a motion in limine or a motion to suppress, the result here is the same. In our discussion we refer to it as a motion in limine.

The motion was overruled. Later, when the testimony was offered at trial, no objection of any kind was made. Under such circumstances there is nothing here for review. The overruling of the motion in limine, even though wrong, is not reversible error. Relief must be predicated on a record made during trial when the objectionable evidence is sought to be introduced.

We have had occasion to discuss the function of a motion in limine several times recently. Lewis v. Buena Vista Mutual Insurance Association, 183 N.W.2d 198 (Iowa 1971); State v. Johnson, 183 N.W.2d 194 (Iowa 1971); State v. Garrett, 183 N.W.2d 652 (Iowa 1971).

In Johnson we said at page 197 of 183 N.W.2d:

"The primary purpose of a motion in limine is to avoid disclosing to the jury prejudicial matters which may compel declaring a mistrial. The trial judge is thereby alerted to an evidentiary problem which may develop in the trial. It should not, except upon a clear showing, be used to reject evidence. Careful procedure dictates the trial court's order on a motion in limine should prohibit disclosure of questionable evidence until the court during trial in the jury's absence

has been presented an offer and objection. Thus a proper record may be made for review on appeal."

In the Garrett case this particularly applicable statement appears at 183 N.W.2d 654, 655:

"It has been said granting or rejecting a motion in limine can never be reversible error. * * * This court has not insisted on a subsequent record where the motion in limine *is granted.* * * * but where the motion is *denied,* the complainant must base his complaint on the trial record.

\* \* \* \* \* \*

"* * * All authorities appear to agree that a denial of a motion in limine * * cannot, in and of itself, constitute reversible error. It may be error but can not be reversible error. The reason is simple. The objectionable material has not yet reached the jury's ears. It may never reach the jury. For reasons of its own the opposition may elect not to offer objectionable material. * * *

"It is only when the material is offered in the jury's presence that the harm or error, if any, has been done. Then of course, the movant, having made the motion in limine is in a much stronger position to claim error. Excuses of good faith, use of opening statements, inadvertence or prompt admonition to the jury are harder come by."

It will be noted that the rule where the motion is denied is different than where it is sustained. See Gustafson v. Iowa Power & Light Company, 183 N.W.2d 212, 214 (Iowa 1971) and Hartford Accident & Indemnity Co. v. McCardell, 369 S.W.2d 331, 335 (Texas 1963), which is also cited in State v. Garrett.

As already noted, the error here was not properly preserved and cannot be the basis for reversing the trial court.

 XII. We have carefully considered all of defendant's alleged errors, including his claim that he did not have a fair trial, as we are directed to do by section 793.18, The Code. The evidence of his guilt is strong and compelling. We believe he had a fair trial, though indeed not a perfect one. See State v. Haffa, 246 Iowa 1275, 1286, 71 N.W.2d 35, 42 (1955). We conclude his convictions and subsequent sentences should be affirmed.

Affirmed.

All Justices concur.