William E. HELDENBRAND and Esther Heldenbrand, Appellees,

v.

EXECUTIVE COUNCIL OF IOWA, Acting for the Use and Benefit of the STATE of Iowa, Appellant.

No. 2–56234.

Supreme Court of Iowa.

May 22, 1974.

Rehearing Denied June 24, 1974.

Richard C. Turner, Atty. Gen., and Clifford E. Peterson and John R. Dent, Asst. Attys. Gen., for appellant.

Webster, Jordan & Oliver, Winterset, for appellees.

Heard by MOORE, C. J., and LeGRAND, REES, UHLENHOPP and McCORMICK, JJ.

REES, Justice.

This is an appeal in an eminent domain matter by the defendant Executive Council of Iowa from a jury verdict rendered in favor of plaintiffs in an appeal from a condemnation award.

Plaintiffs William E. and Esther Heldenbrand were the owners of a 160-acre farm in Madison County upon which they resided. On June 9, 1971 the defendant Executive Council of Iowa filed an application to purposes. A compensation commission was plaintiffs for public park and recreational selected by the chief judge of the Fifth condemn all of the tract belonging to the Judicial District, which commission on June 29, 1971 assessed damages to which the plaintiffs would be entitled by reason of such condemnation of their lands, in the amount of $98,000. The report of the commission was filed with the sheriff on the following day, June 30, 1971.

On July 13, 1971 defendant Executive Council filed its notice of appeal from the award of the compensation commission and thereafter the plaintiffs filed their petition in district court as is required by § 472.22, The Code, 1971. After the issues were made up, the cause came on for trial on January 3, 1973, which resulted in a jury verdict in favor of the plaintiffs in the sum of $101,240.

On the morning of the day the cause proceeded to trial as assigned, the defendant filed a motion in limine. In paragraph seven of such motion, the defendant moved the court to limit "all evidence pertaining to this eminent domain condemnation proceeding [which] shall relate to the date of the compensation commission's assessment of damages sustained by reason of the appropriation, that date being the 30th day of June, 1971; and further all evidence relating to values, transactions or improvements subsequent to this date shall not be admissible to show fair market value."

While the appendix does not set out the ruling of the trial court on the motion in limine, the motion was overruled insofar as paragraph seven above set out is concerned, as is disclosed by the transcript certified here. It is the ruling of the trial court on paragraph seven of the motion in limine and other rulings relatable thereto in the record upon which defendant bases the central issue stated here for review.

The defendant states one issue only for review here; namely, on an appeal to the district court from a compensation commission award, should the date of valuation for the taking of property by eminent domain be determined at the time the compensation commission views the premises and files its report of damages? Several brief points are advanced and argued by the appellant peripherally to the above-stated main issue.

The plaintiffs insist error was not adequately preserved in the record so as to permit and allow review by this court in this appeal insofar as the date and time of assessment of damages are concerned.

I. Basically, the only question presented by this appeal is for us to determine the time as of which the property of the plaintiffs was to be valued or their damages assessed; the defendant contending the damages were to be assessed as of the date of the assessment of damages by the condemnation commission, and that such date was the time of "taking", whereas the plaintiffs insist their damages were to be assessed and their property was properly valued as of the date of trial.

"It is the general and well-established rule that damages are to be assessed and compensation determined as of the time of the *taking*. (italics ours) The difficulty ordinarily is in determining when the taking occurs. Owing to the great diversity of constitutional and statutory provisions governing condemnation proceedings in the different states, it is impossible, even if it were desirable, to lay down a universal rule on this point. In many states, for instance, compensation must be paid in advance, and where this is the rule, the taking cannot in any event be in advance of the payment of compensation. In several jurisdictions the rule is that the date of the filing of the petition in the condemnation proceedings will be taken as the time with reference to which the property will be valued, while in others the date is determined by that of the issuance of the summons, or of filing the bond, or of assessment, appraisement, or award, or of trial, or of entry, or varies in different classes of takings."

26 Am.Jur.2d, Eminent Domain, § 152, pp. 814–815.

The above quotation from 26 Am.Jur.2d, is indicative of the complexity of the problem we are confronted with here. In 3 Nichols, on Eminent Domain, § 8.5, p. 26, we find the following:

"The value of real estate is by no means constant, and before compensation can be intelligently assessed for the taking of land by eminent domain, a point of time must be fixed as of which the property is to be valued; and it is the value at that time which the owner is entitled to receive, even if the value of the land rises or falls before the money is actually paid to him. Upon this proposition all are agreed, but there is a great diversity of opinion as to just when that point of time occurs. It was said by Chief Justice Shaw in an early Massachusetts case,

" 'The true rule would be, as in the case of other purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed on. And if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry; and this delay must be compensated by interest. But in other respects the damages must be appraised upon the same rule as they would have been on the day of the taking.'

"The date of the taking is important also, because the only person entitled to recover damages for condemnation is the

person who was the owner of the land at the time of the taking.

"[1] When compensation is assessed as of date of taking.

"In states in which the taking is effected by an administrative order, leaving the compensation to be subsequently ascertained by judicial proceedings, there is no difficulty in the application of this rule; and damages are assessed as of the date of the taking. Any changes in the condition of the property which thereafter take place, whether they result in an increase or a decrease in the value thereof, cannot affect the amount of compensation to be paid.

"When the taking is effected by the mere enactment of a statute, damages are assessed as of the date of such enactment. When the taking is complete and the right to damages accrues upon the filing of an administrative order, damages are assessed as of the date of such filing. When the body empowered to act under the right of eminent domain is not required to make a formal taking, damages are assessed as of the date of the initial physical interference with the rights for which compensation is given.

"One of the reasons assigned for the rule that damages should be assessed as of the date of the formal order of taking was that the alienation of the owner's property was 'definitive, complete and perpetual' on that day, and it would seem to follow that if any further act of the condemnor, such as the filing of a bond, or entry upon the property, is made necessary by statute to make the taking complete and irrevocable, damages should be assessed as of the date of such further act. Nevertheless, if it appears by other provisions of statute that such a result was not intended, damages should be assessed as of the date of the order of taking, notwithstanding the fact that they may not be payable until a future date.

"Either by reason of special provisions in statutes or because of varying circumstances, it has also been held that the time as of which compensation is to be determined may be

"(1) The date the appropriation was first projected;

"(2) The date the appropriation map was filed;

"(3) The date the assessors were appointed.

"[2] When compensation is assessed before the taking.

"In the states in which the taking is effected by judicial proceedings and the compensation is assessed before the taking is made, it is obviously impracticable to assess the damages as of the date of the taking, and of necessity some other rule has to be adopted. In several states it is held that the filing of the petition to condemn, being the first actual step toward devoting the property to a public use, marks a point of time that is as fair and just to both parties for fixing the value of the property as any that could be selected, and it has, consequently, been adopted as the established date as of which damages are assessed. In such jurisdictions, however, if a corporation unreasonably delays the prosecution of its petition while the land is advancing in value, the application of the rule would work great wrong and injustice to the owner, and the petitioner would be able to acquire the property at much less than its value at the date of the taking; and if the corporation insists upon the application of the established rule of damages in such a case, the court is warranted in dismissing its petition for want of prosecution. Where the statute provides for the date of valuation at the initial step in the acquisition process, such as upon the passage of a resolution authorizing the condemnation, and then permits a protracted period of time

for the prosecution of the proceeding, during which time the value of the property may rise or fall, the statute is unconstitutional as conflicting with the constitutional concept of 'just compensation.'

"In other states the damages are assessed, in accordance with the specific requirement of statute, as of the date of the issuance of process on the petition, but in the majority of jurisdictions, the damages are assessed either as of the date of the trial, or of the award of the commissioners. If there is an appeal to a jury from the original award, as it is generally held that a taking can be constitutionally effected by payment or tender of the original award, if such payment or tender is made, the compensation on appeal is assessed upon the same basis as the original award; but if no tender is made or the taking has to be deferred until compensation is actually paid, the owner is entitled to the value as of the time of the second trial."

The procedure for the condemnation of real property by eminent domain is set forth in chapter 472, The Code. Section 472.17 provides that the appraisement of damages returned by the commissioners shall be final unless appeal therefrom is taken. Section 472.23 provides that on trial of an appeal once taken the question to be determined is the amount of damages. The date for the ascertainment of damages on appeal is not specifically provided.

■ It is generally understood that the measure of damages in eminent domain proceedings is the property's reasonable market value at the time of *taking*. Crist v. Iowa State Highway Comm., 255 Iowa 615, 620, 123 N.W.2d 424, 427; 26 Am. Jur.2d, Eminent Domain, § 152, p. 814; 29A C.J.S. Eminent Domain § 185(g), p. 811. This court has spoken repeatedly to the question before us here, and has made reference to the "time of taking" in numerous opinions. We have never, however, specifically defined the "time of taking" as meaning the date upon which the condemnation commission views the premises and assesses the condemnee's damages, or at some other point in time.

In an early decision by this court, in Ellsworth v. Chicago & I. W. Ry. Co., 91 Iowa 386, 389, 59 N.W. 78 (proceedings for the acquisition of a railroad right of way), this court said:

"* * * It is the general rule that the damages are to be assessed as of the time when the commissioners make their appraisement, if the company proceeds under the assessment with reasonable diligence, and that the values as they existed at that time are to control on appeal."

Kosters v. Sioux County, 195 Iowa 214, 191 N.W. 993, involved the partial taking of a farm premises. In reversing the trial court, this court said at page 221 of 195 Iowa, page 996 of 191 N.W.:

"It is contended that the court erred in permitting witnesses to testify with regard to the value of the farm after the construction of the improvement and at the time of the trial, the point made being that the damages should have been limited to the condition of the farm immediately before the condemnation, and immediately thereafter. The rule was correctly stated by the court to the jury. The highway had been constructed before the trial in the district court, and witnesses were enabled to describe its condition and the condition of the farm with the highway actually thereon. * * * The jury were instructed that they were to find the difference in value between the farm as a whole immediately before the taking and immediately thereafter. This evidence was confined to this."

In *Kosters*, the court studiously differentiated between the time of trial and the time of condemnation.

In Ranck v. City of Cedar Rapids, 134 Iowa 563, 565, 111 N.W. 1027, 1028, this court said:

"It is the contention of the appellant that the true measure of damages was the value of the property as a whole in its condition as it stood at the date of the condemnation, and that the inquiring into the details here referred to tended to confuse the jury concerning this rule and unduly enhance the plaintiff's recovery period. It is true that the defendant's liability is to be measured by the value of the property as it stood at the date of its appropriation; but it does not follow from this proposition that evidence of the kind here in question is not material and competent to aid the jury in finding what in fact that value was."

In *Ranck*, the evidence complained of embraced the testimony of the plaintiff who showed that he had fitted up a livery stable and undertaking rooms on the property and had carried on such a business there for a long time, and that the situation was well adapted to and valuable for such purposes. Clearly, the reference to the "value of the property as it stood at the date of its appropriation" has direct reference to the valuation placed thereon by the condemnation appraisers.

In Maxwell v. Iowa State Highway Comm., 223 Iowa 159, 164, 271 N.W. 883, 886, this court said:

"We have carefully examined the instructions on the measure of damages * * *, and find from such examination that the court correctly instructed the jury on the measure of damages, which is the difference between the reasonable market value of the property immediately before the condemnation proceedings were had and immediately thereafter."

In Beal v. Iowa State Highway Comm., 209 Iowa 1308, 1309, 230 N.W. 302, the court was concerned with determination of the interest to be assessed on a jury award in a condemnation appeal:

"Pursuant to statutory provisions with reference to the condemnation of a right of way through a farm owned by appellees herein, appraisers were appointed and an award was made in the sum of $10,607.50. This amount was deposited with the sheriff of Ida county, whereupon the state highway commission took possession of the land on May 18, 1928. Subsequently, and on May 24, 1928, the appellees appealed from the award of the appraisers to the district court of Iowa in and for Ida county. On February 19, 1929, trial was had, and the jury returned a verdict in favor of the appellees in the sum of $12,933.50. Motion for new trial was overruled, and on March 14, 1929, the trial court ordered that the amount of damages in favor of the plaintiff-appellees occasioned by the road project in question is the sum $12,933.50, which was entered of record with interest thereon at the rate of 6 per cent per annum from May 18, 1928, and that attorney fees in favor of attorneys for plaintiff (appellees) shall be taxed as part of the costs, and said fees were so taxed in a sum fixed by the court."

It is to be observed that a deposit was made in *Beal* and the condemnor took possession of the land on May 18, 1928. Trial was had and a verdict returned on February 19, 1929. The award of interest from May 18, 1928 seems to us to be significant in the context of the matter before us here. It is to be noted that the trial court awarded interest and this court affirmed the award from May 18, 1928 and not from the date of trial. This indicates to us the "time of taking" was proximate to the time of assessment of damages by the condemnation commission.

In Harris v. Green Bay Levee and Drainage District No. 2, 246 Iowa 416, 419, 68 N.W.2d 69, 71 (another case involving the allowance of interest) the trial jury

had enlarged the condemnation award. Quoting from Welton v. Iowa State Highway Comm., 211 Iowa 625, 639, 233 N.W. 876, 884, the court said:

" 'The correct method to be followed is for the jury to ascertain the amount of plaintiff's damages, and if this amount is *larger* than the condemnation award, the court can add the interest from the date of the taking.' "

Obviously, in *Harris* the date of taking was inferentially found to be the date of the awarding of damages by the condemnation commission.

And, in Belle v. Iowa State Highway Comm., 256 Iowa 43, 54, 126 N.W.2d 311, 317, we said:

"Plaintiffs' damages were to be determined as of the date of condemnation."

In Wilkes v. Iowa State Highway Comm., 186 N.W.2d 604, 608 (Iowa 1971), we said:

"Moreover, it appears defendant instantly seeks a retrial in order to present evidence having all the colorations of impeachment. * * * [citations]. This it improperly proposes because there is little or no prospect of change in result since plaintiff was continuing in business at trial time and his condemnation damages were determinable as of the prior taking date." [citations].

Clearly, in *Wilkes* a distinction was made between the time of *trial* and the *prior taking date*. The prior taking date could refer to no other time than the time of the assessment of damages by the condemnation commission. See also Jones v. Iowa Highway Comm., 185 N.W.2d 746, 750 (Iowa 1971); 4 Nichols on Eminent Domain, § 12.23; 20 Hastings Law Journal, 773, 777; 13 Rutgers Law Review, 284, et seq.; 4 Tulsa Law Journal, 95, et seq.

In the light of all of the foregoing, we hold that the "time of taking" in a condemnation proceedings is the date upon which the condemnation commission views the premises and fixes the damages to which the condemnee is entitled. Adherence to this rule will bring stability and certainly to this troubled area of the law.

II. Other considerations enter into our determination that the "time of taking" in an eminent domain proceedings must be established as the date of the assessment of damages by the condemnation commission.

In the matter before us, the plaintiffs-condemnees remained in possession at all times from and after the date of the assessment of damages by the condemnation commission and were still in possession at the time of trial. No deposit as provided in § 472.25, The Code, was made by the condemnor, but even if such deposit had been made the plaintiffs could not have been dispossessed of their residence, dwelling house or other pertinent buildings and grounds until the damages thereto had been finally determined and paid. Section 472.26, The Code. Accordingly, the plaintiffs were entitled to receive and did receive, between the date of the assessment of damages by the condemnation commission and the trial, all profits and rentals or other income from the land which is the subject matter of this controversy.

In those instances where the amount of the verdict on appeal is larger than the initial assessment by the condemnation commission, interest is allowed from the time when the condemnor took possession of the property. While the factual situation here does not attend, the rationale for the allowance of interest is indicative to us that the "time of taking" must therefore be referable to the date on which the condemnation commission fixed the damages. Otherwise, the right of the trial court to allow interest on an award would be meaningless as the right to assess interest as a part of damages from the date of trial would in a sense be a moot situation. See Harris v. Green Bay Levee and Drainage District No. 2, *supra*; Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 108 N.W.2d 487; Welton v. Iowa State

Highway Comm., 211 Iowa 625, 233 N.W. 876.

Section 472.33, The Code, provides in pertinent part that the applicant-condemnor shall pay all costs occasioned by an appeal from an award by a condemnation commission unless on the trial thereof the same or a lesser amount of damages is awarded than was allowed by the tribunal from which the appeal was taken. No other connotation can be placed upon the excerpted portion of § 472.33 than that the time of assessment of damages is the date upon which the "tribunal from which the appeal was taken" fixed those damages.

A reading of § 472.33, The Code, and the interest factor above referred to fortify our conclusion that the "time of taking" must be and is the date upon which the condemnation commission fixed condemnee's damages.

■ III. The plaintiffs contend the defendant failed to preserve error for defendant permitted certain witnesses for the plaintiff without objection and even produced its own witnesses to testify to the value of the farm at the time of trial rather than at the date of assessment of damages by the condemnation commission.

The record indicates William Heldenbrand, one of the plaintiffs, testified on direct examination without objection from defendant that the present fair and reasonable value of his property was $160,000, referring obviously to the valuation as of the date of trial.

A second plaintiffs' witness, McKee, testified on direct examination that the fair and reasonable market value of the Heldenbrand property at the present time (obviously referring to the time of trial) was $101,600. Defendant's counsel objected to the testimony of McKee in this particular on the ground that an improper foundation had been laid and that it would be after the date of condemnation, but the objection was overruled.

Plaintiffs' witness Olson testified over objection that the fair and reasonable value of the Heldenbrand property at the present time (presumably the date of trial) was approximately $120,000. The objection to the question posed to the witness Olson was grounded on the fact the opinion was based on a date after the date of condemnation and was overruled.

Plaintiffs' witness Richards testified that in his opinion the present fair and reasonable market value of the Heldenbrand tract was $104,000, (again referring to the date of trial). Defendant's counsel conducted a voir dire examination of the witness Richards and objected on grounds other than the allegedly improper date of valuation, and the objection was overruled.

Two valuation witnesses testified for the defendant; one Johnston, who testified specifically that as of January 3, 1973, the date of commencement of trial, the estimated value of the Heldenbrand farm was $73,600; another witness, Johnson, testified for the defendant that the present value of the Heldenbrand farm, without the lease, was $71,000.

The overruling by trial court of paragraph seven of defendant's motion in limine obviously set the stage for the main question presented here on appeal. The court's ruling on the motion in limine is taken from the reporter's transcript which is certified to us, as the ruling was dictated into the record. In ruling thereon, the court said:

"With reference to the defendant's motion in limine, the Court sustains paragraphs 1, 2, and 3, and overrules paragraphs 4, 5, 6 and 7.

"With reference to this ruling by the Court the Court will still apply all of the recognized rules of evidence so far as testimony of valuation experts which has been pronounced by the various cases in condemnation matters."

We have directed our attention in prior cases to the office and function of the motion in limine. See State v. Johnson, 183 N.W.2d 194, 197 (Iowa 1971); Lewis v. Buena Vista Mutual Ins. Ass'n., 183 N.W. 2d 198, 200–201 (Iowa 1971); State v. Garrett, 183 N.W.2d 652, 654 (Iowa 1971); State v. Hinsey, 200 N.W.2d 810, 817 (Iowa 1972); State v. Jensen, 216 N.W.2d 369 (Iowa 1974) (filed March 27, 1974).

In State v. Johnson, *supra,* at page 197 of 183 N.W.2d, we said:

> "The primary purpose of a motion in limine is to avoid disclosing to the jury prejudicial matters which may compel declaring a mistrial. The trial judge is thereby alerted to an evidentiary problem which may develop in the trial. It should not, except upon a clear showing, be used to reject evidence. Careful procedure dictates the trial court's order on a motion in limine should prohibit disclosure of questionable evidence until the court during trial in the jury's absence has been presented an offer and objection. Thus a proper record may be made for review on appeal."

See also Sullins, "Preservation of Error: Providing a Basis for Appellate Review", 22 Drake Law Review, 435, 445.

In State v. Jensen, *supra,* we said (in referring to the cases cited above):

> "These authorities aptly describe an overruled motion in limine as a 'red flag.' * * * With the red flag waving the trial court should have prohibited disclosure, not only of the results of the breath test, but also the fact one had been taken. * * * The trial court was alerted to the fatal weakness in the evidence by the motion in limine. Defendant preserved his position by timely objections at trial and should have been spared the prejudice attending disclosure of the test to the jury. Neither should defendant have been required to object to the test in the presence of the jury."

The position of the trial court in the instant case with respect to the valuation testimony was apparent and obvious from and after the order dictated into the record overruling the defendant's motion in limine. While the testimony of the plaintiff William Heldenbrand as to value came into the record without objection, as did the testimony of plaintiffs' witness Richards, the court's position had been demonstrated and we believe error was properly preserved by objection to the testimony of the witnesses McKee and Olson. We conclude the court's application of an improper rule of law with regard to the proper date for the assessment of damages brought about and contributed to the evidentiary problem here presented, and we conclude that in the light thereof the defendant preserved error for review.

IV. Trial court, at the close of all the evidence and the arguments of counsel, submitted certain instructions which made reference to the date of trial as the time for fixing fair and just compensation to which the plaintiffs were entitled. Instructions 3 and 16 specifically make reference to such date for fixing compensation. Instruction 3 reads as follows:

> "The burden of proof is upon the plaintiffs to establish by a preponderance of the evidence, the 'fair and just compensation' to which they are entitled, which, under the law, is the difference in the fair and reasonable market value of their property as a whole immediately before, and the fair and reasonable market value of that portion of said property remaining in the plaintiffs immediately after the appropriation and condemnation. In this case the entire 160–acre farm owned by the plaintiffs is being condemned, therefore appropriation and condemned, therefore the fair and reasonable value immediately after the appropriation and condemnation would be zero. Thus in this case the "fair and just compensation" to which the plaintiffs are entitled is the fair and reasonable value

of the 160 acres as of the date of this trial. * * *"

Instruction 16 is as follows:

"The plaintiffs in their petition have asked for damages because of the condemnation of their 160 acres in the sum of $160,240.00, and in no event can your verdict exceed that amount. This limitation as to the amount is not stated as an indication that such an amount is proper to be allowed by the jury, but as being the amount claimed in the petition, and which therefore limits the amount of your verdict.

"In the verdict, the form of which is submitted herewith, you will insert the total of the two amounts which you find to be the fair and reasonable market value of the 160–acre tract as of the date of this trial, to-wit: January 3, 1973, and the fair and reasonable moving expense to be incurred by the plaintiffs required by virtue of the taking of the 160–acre farm. * * *"

In argument, the plaintiffs contend there was no evidence other than value at the time of trial adduced before the jury and that the court was obligated to instruct as to the value of plaintiffs' real estate at the time of trial, which was the only evidence before the jury. Plaintiffs further assert that for the court to have done otherwise would have constituted reversible error.

Plaintiffs advance the thought in argument that had defendant made an offer of proof to show the value of the Heldenbrand real estate as of the date of the viewing and assessment of damages by the condemnation commission, defendant would have been in a better position to complain about the giving of instructions 3 and 16, but that no such offer of proof was made by defendant.

Exceptions to the giving of instructions 3 and 16 were timely made by counsel for defendant.

█ We are not in disagreement with the general proposition stated by plaintiffs that the court is obligated in instructing a jury to confine its instructions to the factual situation appearing in the record. However, the court must correctly state the law and confine it to such factual situation. A misstatement of the law in an instruction to a jury is reversible error. Morrow v. Scoville, 206 Iowa 1134, 1138, 221 N.W. 802, 804; Brown v. Lyon, 258 Iowa 1216, 1222, 142 N.W.2d 536, 539.

█ In the light of our conclusion and holding that the proper date for the assessment of damages to a condemnee and the "date of taking" under an eminent domain proceedings is the date upon which the damages to the condemnee is fixed by the condemnation commission, we hold trial court applied an erroneous rule of law in submitting instructions 3 and 16 to the jury. Such error is, in our judgment, embraced in the omnibus statement of issues presented for review by the defendant.

We therefore conclude and hold the trial court should have instructed the jury that the time for assessment of damages and the date of taking was the date upon which the condemnation commission fixed and assessed the damages to which the plaintiffs were entitled by virtue of the appropriation of their property for public use.

This case is therefore reversed and remanded.

Reversed and remanded.