# IN THE COURT OF APPEALS OF IOWA

No. 20-1720
Filed January 27, 2022

**KEITH PUNTENNEY,**
    Plaintiff-Appellant,

**vs.**

**DAKOTA ACCESS, LLC,**
    Defendant-Appellee.

_____

Appeal from the Iowa District Court for Webster County, Kurt L. Wilke, Judge.

Keith Puntenney appeals a condemnation award. **AFFIRMED.**

David J. Stein Jr. of Stein Law Office, Milford, and Thomas W. Lipps of Peterson & Lipps, Algona, for appellant.

James Freeman of Zabel Freeman, Houston, Texas, and Mark D. Aljets and Spencer S. Cady of Nyemaster Goode, P.C., Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and May, JJ. Badding, J., takes no part.

**MAY, Judge.**

Dakota Access, LLC (Dakota Access) needed easements so it could run a petroleum pipeline beneath part of Keith Puntenney's land. The easements amounted to a taking. A county commission awarded Puntenney $16,300 as compensation for the taking. Puntenney appealed to the district court. A jury awarded Puntenney $7900 for the taking. The district court denied Puntenney's motion for a new trial. Puntenney now appeals. We affirm.

## I. Background Facts and Proceedings

Keith and Sandra Puntenney own an eighty-acre plot of land in southern Webster County.[1] The Iowa Utilities Board granted Dakota Access the right to use eminent domain to acquire a permanent pipeline easement—plus a temporary construction easement—across a small corner of the Puntenney land. The permanent pipeline easement is fifty feet wide. It totals 0.78 acres. The temporary construction easement applied to 1.76 acres. It expired after eighteen months.

A county compensation commission awarded Puntenney $16,300 as the reduction of the land's fair market value due to the easements. The commission made this award on August 4, 2016. The parties seem to agree that this date— August 4, 2016—is the date on which the taking at issue occurred. *See Heldenbrand v. Exec. Council of Iowa, For Use & Benefit of State*, 218 N.W.2d 628, 634 (Iowa 1974) (holding "that the 'time of taking' must be and is the date upon which the condemnation commission fixed condemnee's damages").

---

[1] Only Keith is a party to this appeal.

Puntenney appealed the commission's award to the district court under Iowa Code section 6B.18 (2016). The court held a jury trial. The jury's sole task was to determine "the difference between the fair and reasonable market value of" Puntenney's property "immediately before the taking on August 4, 2016, and the fair and reasonable market value of the property after the taking."

Puntenney testified to the value of his land based on his experience as landowner and a federal estate and gift tax auditor. He testified that, prior to the taking, his eighty acres had been worth at least $11,500 per acre for a total of $897,000. But the pipeline easements reduced his land's value by at least thirty percent, he believed. So, Puntenney contended, the taking had reduced his land's value by $269,100.

Dakota Access called two certified appraisers, Dennis Cronk and John Harris. Each had completed before-and-after appraisals of Puntenney's land. Each relied on comparable sales from similarly-situated properties. Cronk valued the taking at $7900. Harris valued the taking at $5500.

The jury awarded Puntenney $7900. Puntenney moved for a new trial, which the district court refused. This appeal followed.

## II. Scope & Standard of Review

"Our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion." *Bryant v. Parr*, 872 N.W.2d 366, 375 (Iowa 2015). We review complaints about jury instructions for corrections of errors at law. *Alcala v. Marriot Int'l Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). Conversely, we review evidentiary issues for abuse of discretion. *See State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016). Likewise, we review the district court's rulings on the scope

of closing arguments for abuse of discretion. *Lane v. Coe Coll.*, 581 N.W.2d 214, 218 (Iowa Ct. App. 1998) ("A trial court has broad discretion in deciding on the propriety of closing arguments to the jury."). A district court abuses its discretion when it decides issues "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014).

When applying these standards, we bear in mind there is "a presumption of regularity in trial proceedings." *State v. McFarland*, 287 N.W.2d 162, 164 (Iowa 1980). We presume the district court's rulings are correct. *McKinney v. Hartman*, 3 Iowa 344, 345 (1856); *see Cass Cnty. v. Audubon Cnty.*, 266 N.W. 293, 296 (Iowa 1936) (noting "the presumption that the action of the court was regular and lawful in all respects"). "We do not presume error." *State v. Cook*, 330 N.W.2d 306, 313 (Iowa 1983). Rather, "the burden rests upon the appellant not only to establish error but to further show that prejudice resulted." *In re Behrend's Will*, 10 N.W.2d 651, 655 (Iowa 1943). Likewise, we will find no abuse in the court's discretionary rulings without "an affirmative showing of abuse"—"and the burden of so showing rests upon the party complaining." *State v. Gartin*, 271 N.W.2d 902, 910 (Iowa 1978) (citation omitted); *see Bremicker v. MCI Telecomms. Corp.*, 420 N.W.2d 427, 428 (Iowa 1988) ("The discretionary decisions of the trial court are presumed to be correct until the contrary is shown by the complaining party."). "This burden is heavy, indeed, for it can only be sustained by showing abuse *and* prejudice." *Gartin*, 271 N.W.2d at 910 (citation omitted).

**III. Discussion**

Puntenney raises five issues on appeal. He claims the district court abused its discretion by (1) limiting his closing argument, (2) excluding certain evidence

about land values, (3) excluding evidence about the dangers of pipelines, and (4) excluding evidence about post-taking damages. He also argues (5) the district court erred by improperly instructing the jury. We will address each issue in turn.

### A. Closing Arguments

As mentioned, appraiser Harris testified the value of the taking was $5500. In arriving at this number, Harris relied on a method called "paired sales analysis." This method isolates the impact of pipeline easements by comparing sales of land with and without similar easements. Harris relied on four sets of paired sales to conclude that the presence of the pipeline on Puntenney's property would have a negligible impact on its market value.[2]

On cross-examination, Puntenney questioned Harris about one of the sales—dubbed "Control Sale A"—that Harris had used in the paired sales analysis. Four months after the sale, the new owner had conveyed a voluntary pipeline easement to Dakota Access for $120,225. During cross-examination, Harris initially testified that he didn't know how much the new landowner received for the voluntary easement. Puntenney then used Harris's deposition to elicit the $120,225 figure from Harris.

Later, Dakota Access moved to prohibit use of the $120,225 figure in closing arguments. Dakota Access argued that although it was permissible for Puntenney to use the figure during his impeachment of Harris, the figure was not admissible to show the value of Puntenney's loss. The district court agreed and prohibited use of the figure in closing arguments.

---

[2] Harris found the presence of the easement would reduce the value of the Puntenney parcel $5500 in total to $753,000, or about $70 per acre.

On appeal, Puntenney argues the district court abused its discretion by not allowing him to use the $120,225 figure to show the kind of "diminution in value" that pipeline easements cause. We disagree. Our supreme court has made clear that a landowner like Puntenney may not use "evidence of the price" that "a condemner" like Dakota Access "paid to another condemnee"—such as the buyer of the Control Sale A property—"to establish damages in a condemnation appeal."[3] *Johnson v. Des Moines Metro. Wastewater Reclamation Auth.*, 814 N.W.2d 240, 249 (Iowa 2012). Yet that is exactly how Puntenney intended to use the figure during closings: As his briefing makes plain, Puntenney wanted to use the $120,225 figure to show "diminution in" his land's "value," i.e., his damages. So the district court did not abuse its "broad discretion" by prohibiting use of the $120,225 figure in closings. *See Lane*, 581 N.W.2d at 218 ("A trial court has broad discretion in deciding on the propriety of closing arguments to the jury.").

**B. Market Valuation**

Next, Puntenney argues the district court abused its discretion by excluding exhibit 79 as evidence of the market price for farmland. We disagree.

Exhibit 79 was one page of a "thick" document—perhaps thirteen or sixteen pages in total—that Dakota Access provided to owners of the land under which the

---

[3] We acknowledge Puntenney's argument that the $120,225 payment was "intertwined" with—indeed, "baked into" the price for—Control Sale A. So, Puntenney argues, because Harris relied on Control Sale A in forming his opinion about Puntenney's loss, Puntenney should have been able to use the $120,225 payment as evidence of his loss. But we do not think the district court was obligated to adopt this view. The $120,225 payment was made to the buyer—not the seller—about four months after the sale was complete. And Puntenney has not cited—and we have not found—record evidence showing a connection between the sale price and the $120,225 payment.

planned pipeline would run. Dakota Access distributed the document in 2014, well before Dakota Access had received approval for the pipeline project or eminent domain rights. Exhibit 79 lists a "Maximum Market Price/acre," an "Average Market Price/acre," and a "Median Market Price/acre" for the eighteen Iowa counties that the proposed pipeline would cross. For Webster County, the document listed a maximum price of $12,500 per acre, an average of $9623.03 per acre, and a median of $9776.50 per acre.

Our record does not contain the remaining twelve or fifteen pages of the document from which exhibit 79 was taken. But based on Puntenney's trial testimony and counsel's professional representations, it appears undisputed that Dakota Access distributed exhibit 79 to give landowners a sense of what kind of offers Dakota Access planned to make to obtain voluntary easements.

Puntenney claims the district court should have admitted exhibit 79 as an admission by Dakota Access about land values in Webster County. Dakota Access responds that exhibit 79 was "evidence of pre-condemnation settlement discussions" and properly excluded under Iowa Rule of Evidence 5.408. *See* Iowa R. Evid. 5.408(a). Dakota Access also notes "pre-condemnation offers to a condemnee to acquire land [are] inadmissible" to show market value under *Gustafson v. Iowa Power & Light Co..* 183 N.W.2d 212, 214 (Iowa 1971). This is so—*Gustafson* explained—because pre-condemnation offers do "not presuppose" market conditions, such as "a willing seller and a willing buyer." *Id.* Rather, they are "based upon the price which a corporation, intending to take the land at all events, is willing to pay to avoid the expense of litigation and the chance of an excessive verdict from an unsympathetic jury." *Id.* (citation omitted).

In response, Puntenney attempts to distinguish *Gustafson* by noting exhibit 79 is not an "offer." And this seems true because exhibit 79 does not mention a specific parcel, a specific landowner, or a specific price that Dakota Access was willing to pay. *See Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 285 (Iowa 1995) ("An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" (quoting Restatement (Second) of Contracts § 24 (1981))). Even so, it is not clear that the lessons of *Gustafson* cannot apply. While exhibit 79 was not an offer, it appears undisputed that Dakota Access distributed exhibit 79 to give landowners a sense of what kind of offers Dakota Access *would* make. No one suggests any other reason for Dakota Access to distribute land-value data to landowners. Certainly, no one suggests Dakota Access was "simply out buying land" for the sake of owning land. *See Gustafson*, 183 N.W.2d at 214 (noting the "[d]efendant was not simply out buying land"). Rather, like the utility in *Gustafson*, it appears undisputed that Dakota Access "was trying to acquire . . . easement[s]" without the expense and uncertainty of eminent domain litigation. *See id.* That was the point of exhibit 79. So just as the offers in *Gustafson* were inadmissible, it seems plausible that exhibit 79 would also be inadmissible.

But we need not decide whether *Gustafson* applies here. As Dakota Access notes, rule 5.408 provided an alternative basis to exclude exhibit 79 because it was part of "pre-condemnation settlement discussions."[4] Puntenney does not

---

[4] Although the district court did not explicitly mention rule 5.408 in its rulings, we can affirm the exclusion of exhibit 79 "on any ground." *See State v. Fontenot*, 958

respond to this argument; his briefs do not mention rule 5.408. So we conclude Puntenney has not shown that exclusion of exhibit 79 was an abuse of discretion. *See State v. Lacey*, ___ N.W.2d ___, ___, 2021 WL 6138941, at *8 (Iowa 2021) ("The party alleging error has the burden to establish that the district court abused its discretion in making its decision on admissibility.").

### C. Safety Information

Puntenney next argues the district court should have admitted exhibit 58, a safety information pamphlet that Dakota Access distributed to some homeowners who lived near the proposed pipeline. Puntenney wanted to use the pamphlet to show the danger of underground crude oil pipelines. This danger, he contends, would affect the post-taking value of his property.

Generally, a party in a condemnation proceeding may "show any fact which bears upon the market value of the land." *Fanning v. Mapco, Inc.*, 181 N.W.2d

---

N.W.2d 549, 555 (Iowa 2021) (*citing Giza v. BNSF Ry.*, 843 N.W.2d 713, 724–25 (Iowa 2014); *DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002)).

Moreover, the parties had full opportunity to litigate the issue below. Prior to trial, Dakota Access filed several motions in limine. In its second motion in limine, Dakota Access sought exclusion of "all evidence regarding settlement negotiations and/or offers to compromise." As support, Dakota Access cited *inter alia* rule 5.408. Puntenney filed a general resistance to Dakota Access's motions. When the motions were heard, the court asked Puntenney's counsel if there was "any objection" to Dakota Access's motion "Number 2 regarding settlement negotiations, offer to compromise, et cetera." Puntenney's counsel acknowledged the motion "should probably be sustained." The court granted the motion.

Later, when Puntenney attempted to question a witness about exhibit 79, Dakota Access objected based on "motion in limine number 2 regarding settlement values." The court sustained the objection.

Later still, Puntenney made an offer of proof in support of exhibit 79. Dakota Access objected on several grounds, including rule 5.408. The court noted the offer of proof but ruled that exhibit 79 "will still be excluded."

191, 197 (Iowa 1970). Relevant here, "danger, or fear of danger, resulting from the exercise of condemnation rights may be shown as affecting market value." *Id.*

But in *Fanning*, our supreme court placed limits on when publications can be used to show that danger—real or perceived—has influenced market price. Specifically, the court required proof that the publication is of such "general circulation in the community" that it was "a matter of common knowledge among those persons from whom a purchaser for the property would probably come." *Id.* "Otherwise," the publication "would not influence market value." *Id.* at 197–98.

As the district court correctly observed, these foundational requirements were not met here. Trial testimony showed exhibit 58 was distributed only to a narrow class of individuals: *homeowners* who lived near the proposed pipeline. Even Puntenney—who owned land near the proposed pipeline but did not live there—did not receive exhibit 58. So far as the record shows, its distribution was just not wide enough to become a matter of "common knowledge among those persons from whom a purchaser for the property would probably come." *See id.* at 197. The district court did not abuse its discretion by excluding it.

### D. Post-Taking Damages

Puntenney also claims the court abused its discretion by excluding evidence of "permanent physical damage" to his land that would occur through construction of the pipeline. We disagree. In this condemnation appeal, the only task for the jury was to determine the value of the land prior to and immediately after the taking. *See Johnson*, 814 N.W.2d at 246. Post-taking damages—such as construction damages—must be pursued in a separate proceeding. *See generally* Iowa Code ch. 479B. This bifurcated approach is required by our supreme court's decision in

*Draker v. Iowa Elec. Co.*, 182 N.W. 896, 898 (Iowa 1921). Puntenney concedes as much by asking us to modify *Draker*. But the Iowa Court of Appeals has no power to modify opinions of the Iowa Supreme Court. *Brown v. State*, No. 19-1815, 2021 WL 1661157, at *6 (Iowa Ct. App. Apr. 28, 2021) (collecting cases). Rather, we must follow them as written. *NCJC, Inc. v. WMG, L.C.*, No. 19-0241, 2020 WL 2478670, *2 (Iowa Ct. App. May 13, 2020), *aff'd on further review*, 960 N.W.2d 58 (Iowa 2021). And the other cases discussed in Puntenney's brief are distinguishable because none of them involved an Iowa Code chapter 6B condemnation appeal. *See Knick v. Township of Scott*, 139 S.Ct. 2162, 2170–72 (2019) (considering the availability of federal lawsuits under 42 U.S.C. § 1983); *Papenheim v. Lovell*, 530 N.W.2d 668, 673–74 (Iowa 1995) (en banc) (considering damages award in an automobile accident case); *Tiemessen v. Alliance Pipeline L.P.*, No. 14-1727, 2016 WL 351471, at *5–8 (Iowa Ct. App. Jan. 27, 2016) (addressing a summary judgment ruling on a breach-of-contract claim).

All things considered, we see no abuse of discretion in the district court's refusal to admit evidence of construction damages.

### E. Jury Instructions

Finally, Puntenney argues the district court improperly instructed the jury regarding construction-related damages. Specifically, Puntenney claims the court erred by giving instruction fourteen, which stated:

> In arriving at your verdict, you may not consider the following items of damages allegedly caused by the construction of the pipeline:
> • Loss or reduced yield of crops or forage on the pipeline right-of-way, whether caused directly by construction or from disturbance of usual farm operations;

- Loss or reduced yield of crops or yield from land near the pipeline right-of-way resulting from lack of timely access to the land or other disturbance of usual farm operations, including interference with irrigation;
- Fertilizer, lime or organic material applied by the landowner to restore land disturbed by construction to full productivity;
- Erosion on lands attributable to pipeline construction; and
- Any other damages to the land caused by the construction of the pipeline.

These are <u>not</u> elements of damages to be considered in this proceeding.

We disagree. As explained, the remedy available in a chapter 6B condemnation appeal is the difference in the land's market value immediately before and after the taking. Iowa Code § 6B.23; *Johnson*, 814 N.W.2d at 246–47.

This was properly explained in instruction ten, which stated in part:

> The owner, Keith Puntenney, must prove the "fair and just compensation" to which he is entitled. Fair and just compensation is the difference in the fair and reasonable market value of their property as a whole immediately before and the fair and reasonable market value of the remaining property immediately after the taking which occurred on August 4, 2016.

Then it was reinforced by the verdict form, which required the jury to answer only one question:

> We, the jury, find the difference between the fair and reasonable market value of the property before the taking on August 4, 2016, and the fair and reasonable market value of the property after the taking is_____.

Conversely, damages that may occur *after* the taking—including construction-related damages—were not recoverable in this chapter 6B condemnation appeal. Those sorts of damages are reserved for a later proceeding. *See* Iowa Code § 479B.30(7) ("As used in this section, 'damages' means compensation for damages to the land, crops, and other personal property caused by the construction of a pipeline and its attendant structures or

underground storage facility but does not include compensation for a property interest . . . .").

So instruction fourteen was an accurate statement of the law governing chapter 6B condemnation cases like this one.  The district court did not err.

**IV. Conclusion**

Puntenney has not demonstrated an abuse of discretion in the court's evidentiary rulings or the court's handling of closing arguments.   Nor has Puntenney shown error in the jury instructions.  There are no grounds for a new trial.

**AFFIRMED.**