**STATE of Iowa, Appellee,**

v.

**Louis CUNHA, Appellant.**

No. 54619.

Supreme Court of Iowa.

Dec. 15, 1971.

Rehearing Denied Jan. 12, 1972.

**108**

Walter B. MacDonald, Algona, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., and Joseph J. Straub, County Atty., for appellee.

BECKER, Justice.

Defendant was charged by county attorney's information in Kossuth County with the crime of murder and robbery with aggravation. After trial by jury, he was found guilty of murder in the perpetration of a robbery and guilty of robbery with aggravation. He was sentenced to life imprisonment and to 25 years, respectively, the sentences to run concurrently. He appeals. We affirm.

I. Of defendant's eleven assignments of error, the tenth and eleventh go to failure to direct a verdict of not guilty and failure to enter judgment notwithstanding the ver-

dict. These errors require examination of the record evidence in the light most favorable to the State and will be first considered. State v. Harrington, 178 N.W.2d 314 (Iowa 1970).

The record shows defendant and three other men, Ronald Kelsey, Thomas Hinsey and Elvin Gilroy, escaped from the Stearns County jail at St. Cloud, Minnesota, on June 12, 1969. They stole a county-owned car, apparently abandoned that car in a parking lot and stole another car in St. Cloud. From there they proceeded to Mankato, Minnesota, and thence into Iowa. On June 14, at about 7:00 p. m., they robbed a National Food Store at Spirit Lake, Iowa, at 8:00 p. m. they robbed a filling station at Emmetsburg and at 9:00 p. m. on the same evening a Fareway Store at Algona was robbed. In the course of this robbery, Mr. Melvin Bay, store manager, was shot. He died about ten days later.

One or more of the escapees was identified at all of these robberies. At the scene of the fatal shooting Kelsey was identified as the person who shot Mr. Bay and Gilroy was identified as being in the store. Another witness testified he saw two men in the car outside the scene of the robbery and another man running to the car. No evidence directly indicated the presence of four men and defendant was not identified as present at the scene of the shooting.

Other evidence produced by the State consisted of admissions by defendant and by Gilroy in defendant Cunha's presence. On June 15 the four men were in Waterloo. They were with some girls who became embroiled in a controversy with two other girls at an eating place called The Grill. The girls wanted to fight in the parking lot outside the establishment. At this time Gilroy and defendant got out of the car they were in to attempt to stop the expected fight. Sheila Garoutte, one of the girls, testified, "He (Cunha) told me that they had broken out of jail in Minnesota and they robbed three different places and they had shot a man." This statement

is corroborated by a Christine Henninger, one of the girls in the car, but she thought the statement was made by Gilroy in defendant's presence. Two police officers testified that after being given the Miranda warnings defendant told them he had been with the other three men for four days.

There was other evidence that inferentially tended to place defendant with the three other men at the time of the robbery. This evidence need not be examined here. We hold there was sufficient substantial evidence to create a jury question as to defendant's participation in the robbery and consequent guilt of the crime charged. Where there is such substantial evidence the fact question is to be decided by the jury. State v. Hunley, 167 N.W.2d 645, 649 (Iowa 1969).

II. Defendant's first assignment of error concerns the trial court's original action in overruling his demurrer to the information. Kelsey, the man who was identified as the person who fired the shot that killed Mr. Bay, had previously been tried for murder and for robbery with aggravation. He was found not guilty on the two murder counts but was found guilty on the robbery charge. Defendant states the problem thus:

"The issue then is easily stated. Can a defendant who is alleged to be the equivalent of the common law accessory before the fact be tried on two counts on which the alleged perpetrator, principal has been acquitted. * * *."

We hold the answer to be affirmative.

Iowa Code, 1971, section 688.1 abolishes the distinction between an accessory before the fact and a principal. Under this statute when a defendant is charged with aiding and abetting a judgment in a separate trial acquitting the actual perpetrator is neither res judicata nor a bar to the prosecution of defendant. A judgment against one, whether of conviction or of acquittal, has no bearing on the other. State v. Wilson, 236 Iowa 429, 444, 445, 19 N.W.2d 232, 239 (1945); State v. Wilson, 235 Iowa 538, 541, 17 N.W.2d 138, 140, 141 (1945).

III. Defendant next objects to holding the trial in Pocahontas County. The crime was committed in Kossuth County. Motion for change of venue was granted. Trial was assigned to Pocahontas County.

Defendant now states he always contended venue should have been moved entirely out of the judicial district. This contention is not found in the motion for a change of venue but in an affidavit attached to what was denominated a combined motion. The court ruled on all motions, including the change of venue motion, shortly before trial. The pertinent affidavit concluded:

"* * * I further state that due to the excitement and prejudice against me in this judicial district I cannot receive a fair and impartial trial. I base this statement on the fact that three of the people charged with me have been tried and convicted, and I believe that in order to receive a fair and impartial trial, my case must be tried in a metropolitan area outside of the judicial district in which the other cases were tried."

The court's ruling on the place of trial was:

"That the defendant cannot receive a fair and impartial trial in Kossuth County, Iowa, owing to the excitement and prejudice against the defendant in said county, and defendant's motion for change of venue filed on May 11, 1970, and supplemented by his Combined Motion filed October 19, 1970, is hereby changed to Pocahontas County, Iowa, a county located in this judicial district in which no such objection exists."

Other than the affidavit of defendant himself, the record is devoid of evidence to show excitement or prejudice in Pocahontas County, as distinguished from Kossuth County.

█ A change of venue outside of the judicial district would have required an exercise of the court's inherent power to so act to provide a fair and impartial trial. The statute as now worded requires the change of venue to be within the judicial district. Section 778.10, Code, 1971. The court might well have transferred this case outside the district in order to insure a speedy, impartial trial, Harnack v. District Court of Woodbury County, 179 N.W.2d 356 (Iowa 1970), but we decline to hold on the record made here that failure to do so constituted reversible error.

IV. In connection with the pretrial pub-. licity of this case and the three companion cases tried earlier, defendant makes another point. Prior to trial the State made a motion in limine asking an order of restraint against defendant or his attorney asking any questions in relation to the jury's verdict in the case of State of Iowa v. Ronald Allen Kelsey. The resultant order read:

"(a) Para. 1 is hereby sustained and the defendant and his attorney shall refrain from testifying regarding the jury's verdict in the case of State of Iowa v. Ronald Allen Kelsey or asking any questions directly or indirectly either of witnesses or prospective jurors on voir dire which would elicit or tend to elicit or suggest or tend to suggest the jury's verdict in said case."

Defendant contends counsel was unfairly inhibited in his examination of jurors. The situation was unusual. Kelsey had been found not guilty of murder but immediately thereafter the jury foreman had issued a statement saying the jury had misunderstood the verdict forms and had in fact intended to find defendant guilty of murder. This and the details of the evidence in the Kelsey case had received extensive newspaper publicity in Kossuth County where the crime had occurred.

█ The court ruled without objection by either side that the questioning of the jury would be in chambers, i. e., each juror would be brought in and questioned in the absence of the others. Our difficulty is that no record of this voir dire examination was made. The court did not prohibit questions going to the jurors' general knowledge of the case, gained by news media publicity or otherwise. We do not know if such questions were pursued. Nor do we know what voir dire questions were asked or how and to what extent the order did in fact inhibit counsel. Under the circumstances shown here there is no record upon which reversal can be based.

V. Defendant was identified by witness Patricia Larson Johnson as one of the four men who robbed the National Food Store at Spirit Lake just about two hours prior to the fatal robbery at Algona. No objections to the questions and answers were made at the immediate time of asking but before cross-examination was commenced defense counsel moved for a mistrial. He argued this identification was not within the scope of the minutes of evidence filed in connection with this witness. The minutes read:

"PATRICIA LARSON JOHNSON, Spirit Lake, Iowa, if called as a witness, will testify substantially as follows: That on June 14, 1969, she was employed as a checkout girl at the National Food Store in Spirit Lake, Iowa. She will testify regarding a robbery that occurred in said store while she was employed there and she will describe the subjects she saw involved in the robbery. She will also testify that after the robbery she was able to identify the defendant Thomas Hinsey from a group of photographs of possible suspects."

Defense counsel states he did not ask for a bill of particulars because Hinsey was the only person the witness identified at the three prior trials and the prosecutor told him "Miss Johnson's testimony was restricted to Thomas Hinsey whom she identified at the Estherville (trial)." Hence the identification came as a surprise. Defense counsel had tried to talk to the witness prior to trial but she had refused.

The prosecutor said he could not recall making any such statement to defense counsel.

■ A witness whose name is endorsed on the indictment (or information), and minutes of whose testimony are filed, is not limited to those minutes in his actual testimony. State v. Salter, 162 N.W.2d 427, 431 (Iowa 1968), (Rawlings and Becker, JJ., dissenting); State v. Miller, 259 Iowa 188, 196, 142 N.W.2d 394, 399 (1966); State v. Powell, 237 Iowa 1227, 1249, 24 N.W.2d 769, 782 (1946). The majority rule is clear and the trial court correctly followed it.

■ VI. Defendant objects to the use of two police officers' testimony. We have read the record and conclude the court did not abuse its discretion when it ruled the testimony was proper rebuttal evidence. State v. Willey, 171 N.W.2d 301, 302 (Iowa 1969).

■ VII. Defendant objected to Instruction No. 9 which defined aiding and abetting. The burden of his complaint is that the court did not say to aid is to *actively* help, assist or support and to abet is to *actively* encourage, counsel, incite or instigate the commission of a crime. The word *actively* was properly omitted. "To aid or abet means to assent to an act or lend countenance or approval either by active participation in it or by some manner encouraging it." State v. Brown, 172 N.W.2d 152, 155 (Iowa 1969). The definition does not require use of the word "actively" in the instruction.

■ Omission of the phrase "if the State has not established all of said purposes by the evidence beyond a reasonable doubt, then it will be your duty to find the defendant not guilty of such offenses", at the end of Instructions 9 and 24 is assigned as error. The phrase was properly added to Instructions 10, 11, 15 and 19, where the elements of proof necessary to the State's case were discussed. In Instruction 19 the balancing elements are juxtaposed but are properly present. Instructions 9 and 24 dealt only with aiding and abetting and were only a part of the prosecution's case. The instructions, taken as a whole, properly advised the jury of the law in this regard.

■ It was not error to refuse defendant's proposed instruction that defendant's action in turning himself in to the law enforcement officials was evidence of innocence. The instruction was not essential to proper submission of the case and it was well within the court's discretion to refuse it.

■ VIII. Evidence of Patricia Mason and Joan Grier was admitted even though prior statements of these witnesses were not made available to defendant as ordered by the court. This omission should have been called to the attention of the court. We hold failure to do so and proceeding to trial constitutes a waiver of an objection of this kind. The situation is analogous to the duty of the attorney when the court fails to rule on a motion. If counsel does not insist on a ruling the motion is deemed to be overruled and counsel waives his rights in the matter. State v. Garrett, 183 N.W.2d 652, 655 (Iowa 1971); State v. Hephner, 161 N.W.2d 714, 717 (Iowa 1968). So also where the ruling requires furnishing of information before trial, counsel should insist on his rights or at least make a record showing his rights are being ignored by the court as well as the opponent. Proceeding to trial without such a record leaves nothing for later complaint.

■ Defendant strenuously complains of the court's failure to order copies of all statements, reports or summaries of those persons that the State intended to call as witnesses. The court limited the statements to be produced to sworn statements and ordered certain photographs produced. The order was within the letter and spirit

of State v. Eads, 166 N.W.2d 766 (Iowa 1969).

IX. As is apparent from the recitation of facts in this case, there was much evidence of criminal acts by the four escapees. Many of these acts were not directly connected with the Algona robbery. Ordinarily evidence of other crimes is not admissible in a criminal prosecution. In State v. Gill, 259 Iowa 142, 145, 143 N.W.2d 331, 333 (1966), we reiterated the rule:

" 'The state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for separate punishment or as aiding the proofs that he is guilty of the crime charged. The exceptions to the rule may be classified as follows: Evidence as to other offenses is competent to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial.' "

Defendant also cites Garner v. State, 269 Ala. 531, 114 So.2d 385, 386 (1959):

"Stated another way, the State is not permitted to give in evidence other crimes alleged to have been committed by the defendant unless they are so connected by circumstances with the particular crime charged as that proof of one fact with its circumstances has some bearing on the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged. Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847; Wigmore on Evidence, 3rd Ed., Vol. 2, § 304."

The State contends the various acts of the four men were so interrelated as to make them admissible even though some of those acts were criminal in nature. On June 14, 1969 three robberies occurred at which one or more of the four men were identified. The last of the robberies, the instant case, resulted in a killing. It was necessary that the available evidence as to the activities of the four men be shown. Such actions were relevant from the time of the jail escape until the admissions and identification made at Waterloo four days later. Cf. Kirkpatrick v. Commonwealth, 211 Va. 269, 176 S.E.2d 802 (1970).

Counsel for both sides have been particularly helpful in briefs and arguments on this point. We conclude from reading the evidence and the cases cited that the evidence was admissible to show a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the other.

X. In connection with the matter of showing the entire pattern of activity the State was allowed to introduce evidence of a lineup at which Hinsey, Gilroy and Kelsey were identified by witnesses to the three June 14 robberies. This evidence was relevant as noted in Division IX above. Defendant was not yet in custody and thus was not present. This does not vitiate or render inadmissible the otherwise admissible evidence.

Defendant would have us place the same foundational burdens on this type lineup evidence (identification of an accomplice in a relevant related procedure) as are required for identification of defendant in like procedure. We are cited no direct authority on the subject. We hold the lineup procedure must be fair and subject to due process rules in any event but the principles found in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967) and Gilbert v. Califor-

nia, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), are not fully applicable to lineup identification of persons other than defendant.

In this case the lineup was held on July 1, 1969. Defendant was not charged until September 8, 1969 and was not taken into custody until October 1, 1969. As to this defendant, the State was simply proceeding in the development of relevant evidence. It was not necessary that defendant's attorney be present as a foundation for admissibility of such lineup evidence.

Defendant relies largely on the absence of his attorney. He does not claim there was any inherent unfairness in the lineup procedures and developed no evidence to that effect on cross-examination. The opportunity for such review was present because both the officer who conducted the lineup and the witnesses who made the identifications were witnesses in this case. Photographic evidence introduced in connection with the lineup testimony appears on its face to have fairly presented the selection process to the witnesses; i. e., there were no obvious discrepancies as to race, coloration, age, height, weight, or the like. Both frontal and profile views were presented. We have already concluded the evidence was relevant. We now hold it was not inadmissible because of the absence of defendant or his attorney.

Finally, we have considered defendant's numerous complaints concerning admissibility of evidence. The foregoing discussions indicate our basis for holding the evidence offered relevant and admissible.

This case was tried with care and spirit by both sides. The appellate briefs have been exhaustive and prepared with care. After consideration of all points we find no reversible error.

Affirmed.

All Justices concur.