**Louis CUNHA, Appellant,**

v.

**Lou V. BREWER, Warden at the Iowa State Penitentiary, Appellee.**

**No. 74–1521.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1975.

Decided Feb. 7, 1975.

Rehearing and Rehearing En Banc Denied March 19, 1975.

Robert N. Clinton, Iowa City, Iowa, for appellant.

Fred M. Haskins, Asst. Atty. Gen., Des Moines, Iowa, for appellee.

Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.

MATTHES, Senior Circuit Judge.

Petitioner Louis Cunha, an Iowa state prisoner, was found guilty on an information charging him with murder and robbery with aggravation. The robbery took place in a supermarket at Algona, Iowa, at approximately 9:00 p.m. on June 14, 1970. During the robbery, Melvin Bay, the manager of the market, was shot. He died about ten days later from the gunshot wound. The judgment of conviction under which petitioner was sentenced to concurrent terms of life imprisonment for the murder and 25 years for the robbery was affirmed by the Supreme Court of Iowa. State v. Cunha, 193 N.W.2d 106 (Iowa 1971).[1]

On July 9, 1973, petitioner, acting pro se, filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Iowa. Since filing this action, petitioner has been represented by court-appointed attorneys associated with the University of Iowa Law School.

The district court, upon consideration of "the transcripts of the petitioner's trial, the record on appeal to the Iowa Supreme Court, the decision of the Iowa Supreme Court, and all of the matter submitted to the Court by the petitioner," denied the petition for habeas corpus relief and dismissed the proceeding. In appealing from the order of dismissal, petitioner presents two basic claims:

(1) There was a total lack of evidentiary support for the convictions so as to deprive petitioner of due process of law in contravention of the fourteenth amendment.

(2) Introduction into evidence of certain other crimes, allegedly committed by petitioner and his companions shortly before and after the Algona robbery, deprived petitioner of a fair trial, in violation of the fifth, sixth, and fourteenth amendments.

Since petitioner attacks the sufficiency of the evidence of guilt and the admission of certain evidence at his trial, it is necessary that we present a summary of the relevant evidence.

On June 11, 1969, four men, Al Gilroy, Thomas Hinsey, Ronald Kelsey, and petitioner, escaped from the county jail in St. Cloud, Minnesota. The men stole a county squad car parked outside the jail, but they abandoned it a short distance away after removing handcuffs, Mace, and some .38 caliber bullets from the car.

On June 12, a 1961 light-colored Chevrolet station wagon was stolen in Sartell, Minnesota, a community just outside St. Cloud. The car was subsequently recovered in Mankato, Minnesota.

In the late afternoon of the next day, June 13, the four men offered two young girls in Mankato a ride in a light-colored 1961 Chevrolet station wagon. The two girls agreed, and the men accompanied them to social gatherings at two homes in Mankato that evening. During the evening various people saw petitioner with handcuffs and Mace. Moreover, one person heard petitioner tell one of the other escapees to go to the Chevrolet to retrieve an item "under the floormat by the gun."

On June 13 or 14 a 1963 Chevrolet was stolen in Mankato. It was recovered on June 15 in Garner, Iowa.

---

1. Three other participants in the series of crimes hereinafter discussed were also tried separately and on separate informations for the robbery and murder in Algona. They, too, were found guilty and their convictions affirmed. State v. Gilroy, 199 N.W.2d 63 (Iowa 1972); State v. Hinsey, 200 N.W.2d 810 (Iowa 1972); State v. Kelsey, 201 N.W.2d 921 (Iowa 1972).

In the afternoon of June 14, a Mrs. Beatrice Nelson of West Okoboji, Iowa, discovered that her purse had been rifled in her home and her billfold, with thirty dollars, credit cards, and a driver's license, had been stolen. That same afternoon petitioner entered a clothing store in the nearby town of Milford, Iowa, and cashed a check payable to himself and bearing the apparently forged signature of Mrs. Beatrice Nelson as the payor. In addition, petitioner was seen in Milford that same day in the company of two other men, one of whom was Gilroy.

At 7:00 p.m. on the same day, June 14, several of the escapees committed an armed robbery in a grocery at Spirit Lake, Iowa, a short distance from Milford. A check-out clerk at the store testified to seeing petitioner in front of the store at the time of the robbery, walking back and forth. The robbers stole a car from the immediate vicinity of the store and then abandoned it several blocks away.

Seventy-five minutes later, Gilroy robbed a gas station attendant in Emmetsburg, Iowa, located a short distance from Spirit Lake. The attendant's wallet was found the next day lying along the road leading east to Algona.

At 9:00 p.m., forty-five minutes after the Emmetsburg robbery, at least two of the escapees entered the Fareway supermarket in Algona. There was evidence that approximately 27 dollars was taken from one cash register till. One of the men, apparently Kelsey, shot Melvin Bay in the abdomen. As stated, Mr. Bay died from the gunshot wound. As at St. Cloud and Spirit Lake, the robbers fled in a car stolen in the immediate vicinity of the crime, abandoned the vehicle a few blocks away, and apparently transferred to another car.

None of the witnesses of the Algona robbery placed petitioner at the scene of the robbery or testified seeing him anywhere in Algona. The only witness for petitioner testified that shortly after 9:00 p.m. the car in which he was riding was passed by a 1965 or 1966 General Motors auto travelling east at high speed. The witness could see two men in the front seat of the speeding car, but could not tell if anyone was in the back seat. No other car was reported stolen in Algona that night.

The next day, June 15, a green 1960 Chrysler was reported stolen in Garner, Iowa, which is east of Algona. The 1963 Chevrolet stolen in Mankato was recovered in Garner the same day. Among the items law enforcement authorities found in or near the recovered Chevrolet were the can of Mace stolen in St. Cloud, handcuffs, and the billfold of Mrs. Beatrice Nelson.

That same day, June 15, the four escapees met four young girls, Christine Henninger, Paula Campbell, Mary Meighan, and Gwen Green, at a beach in Waterloo, Iowa. The men spent several hours with the girls, swimming and picnicking. Later, in the evening, the four escapees and three of the girls drove to a restaurant in Waterloo called the Grill. At the time the men were driving the 1960 green Chrysler stolen in Garner.

Outside the restaurant the girls became involved in an argument with two "go-go" girls from a local club, Sheila Garoutte and Barbara Hardesty. The men and the three girls got into the Chrysler, but the two go-go girls followed them to the car and continued the dispute. Gilroy and petitioner got out of the car and persuaded the two go-go girls to calm down. One of the girls, Garoutte, testified that, "He [petitioner] told me that they had broken out of jail in Minnesota and they robbed three different places and they shot a man." Apparently these statements were made to explain to the two go-go dancers why the men did not wish to attract attention in front of the restaurant, since a police officer was sitting in his patrol car across the street. Two of the girls in the car, Henninger and Campbell, testified that such a statement about escape and robberies had been made, although they were unsure whether it was Gilroy or petitioner who had spoken it. Moreover, according to Garoutte, petitioner

recounted in detail the circumstances of the shooting. Hardesty, on the other hand, testified that petitioner had told her at the Grill that he had split up from the other three men shortly after the escape and had just met up with them again. During the conversation with the go-go girls the men admitted that the Chrysler had been stolen. Later in the evening petitioner and Hinsey confided to Meighan and Campbell that after their escape they had traveled south through Minnesota in a stolen car.

A few days after the Algona robbery and after the theft of another car, the four men separated, and petitioner eventually surrendered to police in New Bedford, Massachusetts. While in custody of authorities in New Bedford, petitioner voluntarily related to police officials that he had been with the other three escapees for four days after the flight from the St. Cloud jail.

Before analyzing the critical facts, we take note that, since this is an action pursuant to 28 U.S.C. § 2254, the scope of our review of the two issues relied upon by petitioner is very limited.

█ It is settled law that the sufficiency of the evidence to support a state conviction raises no federal constitutional question and cannot be considered in a federal habeas corpus proceeding by a state prisoner. Hendricks v. Swenson, 456 F.2d 503 (8th Cir. 1972); Sinclair v. Turner, 447 F.2d 1158 (10th Cir. 1971), cert. denied, 405 U.S. 1048, 92 S.Ct. 1329, 31 L.Ed.2d 590 (1972); United States ex rel. Cunningham v. Maroney, 397 F.2d 724 (3d Cir. 1968), cert. denied, 393 U.S. 1045, 89 S.Ct. 663, 21 L.Ed.2d 594 (1969). Only where the charge against a defendant is *totally* devoid of evidentiary support is his conviction unconstitutional under the due process clause of the fourteenth amendment. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961). Consequently, federal habeas relief under § 2254 is available to the state prisoner on the ground of insufficiency

of the evidence only if there is *no* evidence whatever supporting conviction.

█ It is also fundamental that federal courts possess only limited authority to consider state court evidentiary rulings in a habeas proceeding by a state prisoner. As Judge Webster, now a member of this court, observed in Parker v. Swenson, 332 F.Supp. 1225, 1229 (E.D. Mo.1971), aff'd, 459 F.2d 164 (8th Cir. 1972), cert. denied, 409 U.S. 1126, 93 S.Ct. 943, 35 L.Ed.2d 258 (1973):

This court will not review the wisdom of evidence rulings on petition of writ of habeas corpus. It will limit the scope of its inquiry to an examination of whether federally guaranteed rights have been violated. [Citations omitted.] Only where admission of evidence is so prejudicial as to constitute a denial of due process will federal courts intervene in state proceedings on petition for writ of habeas corpus. [Citations omitted.] Introduction at trial of evidence of prior crimes is a matter of state evidentiary law and thus will ordinarily not be subject to review in federal habeas corpus proceedings.

The thrust of petitioner's attack upon the sufficiency of the evidence is that no witness placed him at the scene of the Algona robbery and murder. Petitioner therefore asserts that there was no evidence, either direct or circumstantial, to show that he committed the offenses in Algona for which he was convicted. His theory is that the conviction resulted solely from evidence showing commission of other crimes assertedly wholly unrelated to the offenses for which he was charged.

But it is important to observe that the State proceeded in the trial of the case on the theory that petitioner was an aider and abettor of the robbery in Algona. Iowa has provided by statute that aiders and abettors who are accessories before the fact are criminally liable as principals. Iowa Code Annot. § 688.1. Aiding and abetting has been characterized by

the Supreme Court of Iowa in the following manner:

> To aid or abet means to assent to an act or to lend countenance or approval either by active participation in it or by some manner encouraging it. [Citations omitted.] Guilt of a person charged with aiding and abetting must be determined upon the facts which show his part in the crime and does not depend on another's degree of guilt. [Citations omitted.]
>
> Mere presence at the scene of a crime is not enough to prove defendant committed the offense or that he did aid and abet its commission. [Citations omitted.]

State v. Daves, 259 Iowa 584, 586, 144 N.W.2d 879, 881 (1966).

■ The State at trial argued that, although petitioner was not placed at the scene of the robbery and murder by witnesses, there was direct and circumstantial evidence to indicate that he had at least aided and abetted the commission of the crimes at Algona, and therefore was guilty as a principal, by serving as a lookout or guarding at the second getaway car used by the robbers after they abandoned the car they had stolen near the Algona grocery. Thus, it is not necessarily fatal to the conviction of petitioner that there is no evidence that he was at the scene of the crime.

■ We consider it significant that petitioner's trial attorney, in arguing his motion for a directed verdict of acquittal, conceded to the trial court:

> Obviously there is some evidence to tie him [petitioner] in [to the Algona crimes], *but we are not saying there is absolutely no evidence.* If we could

say that, I think the court would automatically sustain my motion, but I don't think the evidence can be considered substantial. [Emphasis added.]

Although the evidence of guilt may not be overwhelming, the question on review of this habeas appeal is whether there is any evidence of petitioner's guilt. We believe there is.

First, there is petitioner's statement to authorities in New Bedford that he had been with the other escapees during the first four days after the flight from the St. Cloud jail. This admission is uncontradicted direct evidence that he considered himself to have still been a companion of the other three escapees at the time of the Algona robbery.

Of course, presence at or near the scene of the crime is not enough to prove aiding and abetting, but secondly there is petitioner's statement to the two go-go dancers that the men had escaped from jail, robbed three different places, and shot a man. This admission is direct evidence implicating petitioner in the robbery and murder.[2] Garoutte's testimony is substantiated, in part at least, by the testimony of two of the girls inside the car. The contrary testimony of Hardesty raises only an issue of credibility, which is not cognizable in a 2254 action.

Finally, there is evidence of other crimes by the four escapees which serves as probative circumstantial evidence that the Algona robbery was part of a common scheme or plan by the four men and that petitioner participated in the commission of the Algona robbery, or aided or encouraged the perpetrators thereof. The Supreme Court of Iowa has ruled that the act of aiding or abetting a

---

**2.** Petitioner argues that since Garoutte used the word "they" in describing the admission by petitioner, i.e., "He said that *they* had escaped from jail, etc.," her testimony indicates that petitioner was accusing the other three escapees of the robberies and murder without implicating himself, since Garoutte did not say that petitioner had used the word "we" in describing the robberies and murder, i.e., "*We* escaped from jail, etc."

But a reading of Garoutte's whole testimony indicates that she used the word "they"

rather than "we" in relating petitioner's admission simply because she was quoting petitioner indirectly. Thus later in her testimony Garoutte said:

> I remember Gilroy and Cunha both said they didn't want any heat, they had broken out of jail, robbed three different places and shot a man. . . .

This testimony clearly indicates that Garoutte was testifying that petitioner implicated himself in the series of crimes.

crime may be proven in whole or part by circumstantial evidence. State v. Patman, 189 N.W.2d 620, 622 (Iowa 1971); State v. Brown, 172 N.W.2d 152, 155 (Iowa 1969):

> [Aiding and abetting] is seldom capable of direct proof, but may be inferred from the proven circumstances. . . . Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.

From the evidence of petitioner's conduct, statements, and companionship with the other fugitives both before and after the Algona robbery, the jury could properly infer that petitioner had joined in a common scheme with the other three escapees and that he accordingly aided and abetted the Algona crimes. We find that the record evinces a sufficient quantum of evidence of petitioner's guilt of the crime charged that his conviction is not in contravention of the due process standards of Thompson v. City of Louisville, *supra*.

■ As stated at the outset, the admission at petitioner's trial of the evidence of other crimes committed by petitioner and his fellow escapees is the basis for petitioner's second attack upon his state conviction: he asserts that many of the prior crimes shown at trial were irrelevant to the question of his guilt or innocence and served only to deny him a fair trial by prejudicing the jury. We disagree. We believe that the evidence of other crimes was relevant and probative on the question of petitioner's guilt, and we further find that the admission of this evidence was not so unfair as to deny petitioner due process of law.

■ The Supreme Court of Iowa has long recognized the generally accepted evidentiary rule that although evidence of other wrongdoing by the defendant, wrongdoing for which he is not on trial, may not be introduced into evidence to show defendant's bad character or propensity to crime, evidence of other crimes may be admitted when it is relevant and probative on certain issues at trial. *See, e.g.*, State v. Vance, 119 Iowa 685, 686, 94 N.W. 204 (1903):

> The state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for separate punishment or as aiding the proofs that he is guilty of the crime charged. The exceptions to the rule may be classified as follows: Evidence as to other offenses is competent to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, and (5) the identity of the person charged with the commission of the crime on trial.

*Accord*, State v. Armstrong, 183 N.W.2d 205 (Iowa 1971). *See generally* McCormick, Evidence § 190 (2d ed. 1972); 1 Underhill, Criminal Evidence § 206 et seq. (5th ed. 1956).

■ In reviewing this record for constitutional error, we are constrained to observe that the admission of other crimes is in the first instance a matter within the discretion of the trial judge. The process of determining whether to permit other wrongdoing to be proven at trial

> is not merely one of pigeonholing, but one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility.

McCormick, *supra*, § 190, at 453.

After reviewing the whole record, we cannot say that the trial judge abused his discretion in allowing the other crimes to be proven, and we certainly cannot say that his decision to admit the evidence in question was such a grievous

error as to deny petitioner a fair trial and due process of law.

Considering the evidence in light of the balancing test outlined above, it is apparent that the evidence of other wrongdoing was an important element in the State's case, serving to corroborate the testimony of the girls that petitioner had admitted complicity in the robbery and murder at Algona.[3] Moreover, the record in no way indicates that the State introduced the evidence of other crimes in such a manner that the jury would be unduly prejudiced against the petitioner. Furthermore, the evidence in question falls within several of the exceptions listed in *Vance*, exceptions which are universally recognized as appropriate instances for the admission of evidence of other wrongdoing. Thus the evidence was relevant and probative in providing a motive for petitioner's participation in, or assistance or encouragement of, the Algona robbery. The evidence also indicated a common scheme or plan to obtain transportation and money for travel after escape from jail, and specifically identified petitioner as an aider or abettor or active participant in various crimes of the common scheme. *See* State v. Brown, *supra*, 172 N.W.2d at 155.

Petitioner complains that the State's evidence did not implicate him in every one of the other crimes proven at trial. Generally, in Iowa the competent evidence of wrongdoing is admissible if there is "satisfactory proof that the accused was the person who committed the other acts in question." State v. Porter, 229 Iowa 882, 886, 294 N.W. 898, 900 (1940). However, proof beyond a reasonable doubt that the accused committed the other crimes is not required. *See* McCormick, *supra*, § 190.

It is significant that the State's evidence tied petitioner, directly or indirectly, to nearly every one of the other major crimes introduced at trial. He was

obviously guilty of escape and the attendant crimes. He was implicated in the Spirit Lake robbery. He admitted complicity in at least two car thefts, and the evidence certainly allowed the inference that he participated in the theft of the other cars. He was implicated in the Milford check forgery. Finally, he made the damaging admissions in Waterloo from which the jury could infer his involvement in the Emmetsburg robbery.

To summarize, this is not a case of guilt by association. The evidence of other crimes was not introduced by the State merely to suggest to the jury that petitioner generally was a bad man and therefore likely to have committed the crimes charged, and we do not believe that the evidence had that effect on the jury. Rather, a study of the record shows that the State established a submissible case from which the jury could properly infer that after escaping from jail the petitioner and the other three men embarked together upon a series of criminal acts which culminated in the murder of one of their victims.

Each of the four men was tried before a different jury, and each jury found the evidence sufficient to convict the particular defendant on trial of the Algona robbery and murder. The Supreme Court of Iowa, in four unanimous opinions, concluded in each that the quantum and quality of the proof of robbery and murder had been established, and that the particular defendant had otherwise been accorded a fair trial. The federal district judge, after a studious examination of the record in this case, found that the evidence was sufficient and that the petitioner had not been deprived of any right which constituted a denial of due process. We agree and affirm.

### ON PETITION FOR REHEARING EN BANC

The Court having considered petition for rehearing en banc filed by counsel for appellant and, being fully advised in the

---

3. Indeed, it is not at all clear that the jury would have understood the context and significance of petitioner's admission that the men had escaped from jail, robbed three places and shot a man unless the jury was aware of the escape and the two robberies prior to the one in Algona.

premises, it is ordered that the petition for rehearing en banc be, and it is hereby, denied.

Considering the petition for rehearing en banc as a petition for rehearing, it is ordered that the petition for rehearing also be, and it is hereby, denied.

LAY, HEANEY, and BRIGHT, Circuit Judges, dissenting on order.

We dissent from the order denying a rehearing *en banc.* The prosecutor has presented no evidence that appellant-Cunha committed any act which aided or facilitated the crimes (murder and robbery with aggravation) for which he was convicted and sentenced to life imprisonment. Although all of the other participants in the crimes for which Cunha was convicted were identified by eye witnesses, no one identified Cunha or even placed him in Algona at the time of the robbery and murder.

Rather, the prosecutor presented a massive parade of evidence of 12 crimes, unrelated to the robbery and murder committed by the jail escapees. But even as to these other crimes, the testimony did not implicate Cunha in all of them. To a substantial degree, this conviction seems to rest on a principle of guilt by association. We believe the petition for writ of habeas corpus raises a due process issue of sufficient importance to justify a rehearing by the full court.