Louis CUNHA, Appellee,

v.

CITY OF ALGONA, Defendant,

and

Kossuth County, Appellant.

No. 67374.

Supreme Court of Iowa.

May 18, 1983.

_T.J. Braunschweig, Asst. County Atty., for appellant.

Stephen F. Avery of Cornwall, Avery, Bjorstad & Scott, Spencer, for appellee.

Considered by REYNOLDSON, C.J., UHLENHOPP, HARRIS, McCORMICK, McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ., and LeGRAND, Senior Judge.

UHLENHOPP, Justice.

This interlocutory appeal, taken with leave, involves several legal problems in a multi-faceted damage action.

The case comes to us from an order overruling an amended motion to dismiss made by defendant Kossuth County, addressed to the amended recast petition of plaintiff Louis Cunha. The motion asks dismissal of the counts of the petition against the county and of the claim for punitive damages in certain counts.

Briefly stated, Cunha was convicted in the Iowa District Court for Kossuth County in 1970 and sentenced to life imprisonment.

This court affirmed the conviction. *State v. Cunha,* 193 N.W.2d 106 (Iowa 1971). A federal district court denied habeas corpus, and the United States Court of Appeals for the Eighth Circuit affirmed. *Cunha v. Brewer,* 511 F.2d 894 (8th Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 108, 46 L.Ed.2d 83 (1975). In 1980 another federal district court granted habeas corpus, and Cunha was released. Cunha then sued Kossuth County and the City of Algona for damages.

■ Before we proceed to the merits, we consider a preliminary question. After the amended motion to dismiss, addressed to the recast petition, was submitted to the district court for ruling and before the court ruled on it, Cunha amended the recast petition. The county contends the court did not consider the amendment when it ruled on the motion. We are not convinced the court did not consider the amendment. In any event, had the court sustained the amended motion to dismiss as to the recast petition in unamended form, Cunha could have filed the amendment to the recast petition as of right under rule of civil procedure 86. The amendment strengthened the recast petition, and as the court overruled the motion to dismiss without the amendment it certainly would have overruled the motion with the amendment. We therefore consider the amended motion to dismiss as directed to the recast petition as amended. *See Moser v. Thorp Sales Corp.,* 312 N.W.2d 881, 890, 891, 893 (Iowa 1981). *See also* Iowa R.Civ.P. 89 (amendment pertaining to same events relates back to original pleading).

The counts in the petition which are against the county are numbered II, IV, VI, VIII, and X. Count II alleges in substance that (1) Cunha was prosecuted in a Kossuth County criminal action; (2) he was convicted on November 4, 1970, sentenced to life imprisonment, and incarcerated in the penitentiary until released by a United States District Court on June 26, 1980; (3) the federal district court determined the 1970 conviction violated the fourteenth amendment to the United States Constitution; (4) the Kossuth County criminal action was thereafter dismissed; (5) law enforcement officers of the county (and of the City of Algona) participated in the investigation and prosecution of the alleged crime and in the acts culminating in Cunha's wrongful incarceration; (6) the acts of the county's law enforcement officers violated Cunha's right to, and deprived Cunha of, due process of law guaranteed by the United States and Iowa Constitutions, to his damage; (7) the county's acts were wanton, illegal, and done in such regard as to entitle Cunha to punitive damages; and (8) the investigations of the county's officers were conducted pursuant to the county's existing policy, which was the official policy of the sheriff's department, and were done under color of state law and within the course of county employment. Cunha asked for $1,000,000 compensatory and $1,000,000 punitive damages.

Count IV is the same as count II except that it substitutes for paragraph (6): the acts of the county's law enforcement officers violated section 1983, title 42, United States Code (1981), and Cunha's civil rights.

Count VI is again the same as count II except that it substitutes for paragraph (6): the acts of the county's law enforcement officers resulted in false arrest and imprisonment of Cunha; and it adds paragraph (9): the false arrest and imprisonment were unlawful, with malice, and without probable cause.

Count VIII is also the same as count II except that it substitutes for paragraph (6): the acts of the county's law enforcement officers resulted in malicious prosecution; and it repeats paragraph (9) from count VI.

Final count X is also the same as count II, except that it substitutes for paragraph (6): the acts of the county's law enforcement officers were done negligently and constituted the proximate cause of the damage.

The county's amended motion to dismiss raised substantially the issues which the county presents in this court. The district court overruled the motion, and we granted the county's application for leave to appeal.

I. *Predicting future constitutional change.* The county argues that all counts of the petition must fail because between the time of Cunha's conviction in 1970 and his release in 1980 the constitutional rule regarding sufficiency of the evidence to convict was made more stringent by the United States Supreme Court, and Cunha was released in 1980 under the new rule. The county contends that it was not required in 1970 to anticipate the change in the rule.

The procedural difficulty with this ground of the motion is that it makes assumptions which do not appear on the face of the petition; it is "speaking" in nature. The ground is thus untenable under a motion to dismiss. *Citizens of Washington Square v. City of Davenport,* 277 N.W.2d 882, 885–86 (Iowa 1979). The present action results from the 1980 unappealed, unpublished federal district court judgment, and from the basis for that judgment. But that judgment was not placed before the Iowa district court in this case by pleading, proof, or stipulation, and consequently it is not before us. An Iowa district court cannot in one case take judicial notice of another of its cases, let alone a case in another trial court. *In the Interest of Adkins,* 298 N.W.2d 273, 277 (Iowa 1980); *Hawkeye Security Insurance Co. v. Ford Motor Co.,* 174 N.W.2d 672, 685 (Iowa 1970). *See also Sternberg v. Smith,* 385 So.2d 469 (La.App. 1980); *Temoney v. State,* 290 Md. 251, 429 A.2d 1018 (1981).

We intimate no opinion on the validity of this ground if it were presented appropriately.

II. *Affirmance of criminal conviction.* As another bar to the claims in all counts, the county argues that legal proceedings following Cunha's criminal conviction clothe the county with absolute immunity from civil liability. This argument, like the first one, depends on assumptions dehors the petition. We thus intimate no opinion on the validity of the argument.

III. *Direct due process liability.* The county's next argument requires consideration of a preliminary issue.

A. The county contends, in connection with the subjects of the present division and the following division of this opinion, that a stricter rule of pleading should apply in civil rights cases than in other litigation, and it cites such cases as *Light v. Blackwell,* 472 F.Supp. 333 (E.D.Ark.1979), *aff'd,* 620 F.2d 307 (8th Cir.1980); *Jones v. McElroy,* 429 F.Supp. 848 (E.D.Pa.1977); and *Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D.Pa.1975). Normally in this jurisdiction a motion to dismiss is sustainable only if the petition shows to a certainty that the pleader has failed to state a claim upon which any relief may be granted under any state of fact which may be proved in support of the claim asserted. *Prouty v. Clayton County,* 264 N.W.2d 761, 763 (Iowa 1978). Moreover, we have notice pleading. Iowa R.Civ.P. 69.

We need not decide, however, whether a stricter pleading standard applies insofar as this division of the opinion is concerned, for we hold that the count of the petition attacked does not state a claim in any event.

B. The county's argument here, addressed to count II of the petition, is that a cause of action for deprivation of constitutional due process of law does not exist apart from statute. This requires us to trace the rather circuitous path the law has taken on this point.

Formerly municipalities, including counties, were practically immune from civil rights liability by virtue of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). The United States Supreme Court eventually held, however, that a direct constitutional action could be maintained against individual defendants for fourth amendment deprivations, by virtue of the statutorily-conferred general federal-question jurisdiction in section 1331(a), title 28, United States Code (1976). *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619, 627 (1971). But by as late as 1977, the Court had not decided whether a similar

cause of action existed for deprivations under the fourteenth amendment or against municipalities. *Mount Healthy City School Dist. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471, 478 (1977); *see* Note, *Damage Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922, 925–35 (1976).

The *Bivens* doctrine appears to have been limited, however, by *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell* opened municipalities to section-1983 liability but prescribed parameters. The current trend of opinion thus appears to be against the existence of direct municipal liability for constitutional violations. *Ward v. Caulk,* 650 F.2d 1144, 1148 (9th Cir.1981); *Turpin v. Mailet,* 591 F.2d 426, 427 (2nd Cir.1979), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Cale v. City of Covington,* 586 F.2d 311, 317–18 (4th Cir.1978); *see Molina v. Richardson,* 578 F.2d 846, 851 (9th Cir.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978). As stated in Nahmod, *Civil Rights & Civil Liberties Litigation* § 6.07, at 184 (1979):

> The previously accelerating development in the circuits of a Fourteenth Amendment cause of action for damages against local governments as a way of getting around the pre-*Monell* rule of absolute local governmental immunity is now arrested. While still technically an open question remaining for the Supreme Court, it is after *Monell* seriously questionable whether such a theory, patterned after the implication by the Supreme Court in *Bivens* of a Fourth Amendment action for damages against federal officials, would be permitted. If this is correct, it means that local government damages liability for Fourteenth Amendment violations cannot be based solely on the Fourteenth Amendment using respondeat superior or any other theory of liability.

We hold that count II of the petition does not state a cause of action on which relief can be granted.

IV. *Foundation for holding county under section 1983.* The county's next argument deals with Cunha's claim in count IV based on section 1983, title 42, United States Code (1981). That section provides so far as we are now concerned:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

In *Monell* the Court outlined municipal liability for damages under section 1983 thus:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels. As Mr. Justice Harlan, writing for the Court, said in *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–168, 26 L.Ed.2d 142, 90 S.Ct. 1598 (1970): "Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Al-

though not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

On the other hand, the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tort-feasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

436 U.S. at 690, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 635–36.

■ Notwithstanding the county's contention that a stricter pleading standard applies in a civil rights case, the general rule is that a section-1983 petition against a municipality must allege a claim from which acts may be proved (1) that were under color of state law, (2) that deprived the plaintiff of rights secured by the United States Constitution or laws, *Parratt v. Taylor,* 451 U.S. 527, 532, 101 S.Ct. 1908, 1911, 68 L.Ed.2d 420, 426–27 (1981); *Cohen v. Norris,* 300 F.2d 24, 30 (9th Cir.1962); *Shemaitis v. Froemke,* 189 F.2d 963, 963 (7th Cir.1951), and, since *Monell,* (3) that implicate municipal involvement beyond respondeat superior. 436 U.S. at 694, 98 S.Ct. at 2037, 56 L.Ed.2d at 638.

■ In view of our notice pleading, the allegations of Cunha's count IV, including its paragraph (8), sufficiently state acts under color of law, deprivation of federal rights, and county involvement, to withstand attack by motion to dismiss. The county's claim to the contrary is untenable. Whether Cunha will be able to establish a section-1983 case by proof remains, of course, to be seen.

■ V. *Punitive damages.* The county contends that punitive damages are not recoverable under count II (direct constitu-

tional claim) or count IV (section-1983 claim). We need not consider count II, as we have held it does not state a claim. As to count IV, the county is correct, under *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616, 635 (1981). Cunha cannot recover punitive damages from the county on his section-1983 claim.

■ VI. *Allegations of false arrest and imprisonment and malicious prosecution.* The county attacks counts VI and VIII of the petition on the ground that they do not sufficiently allege the elements of false arrest and imprisonment and of malicious prosecution. The county confounds the statement of a *claim* under notice pleading with the legal *elements* of a tort which must be established at trial. Under common law and code pleading, the declaration had to allege the elements of a cause of action. *Union Bank & Trust Co. v. Himmelbauer,* 68 Mont. 42, 45, 216 P. 791, 792 (1923) ("It is elementary . . . that all elements essential to make out a cause of action must be alleged."). Under present Iowa rule of civil procedure 69, the pleader need only make a short and plain statement of a "claim" showing that he is entitled to relief, and demand judgment.

We are dealing here with two common-law torts. One is false arrest and imprisonment and the other is malicious prosecution. The legal elements of these torts are set out in *Sergeant v. Watson Bros. Transportation Co.,* 244 Iowa 185, 196, 52 N.W.2d 86, 92–93 (1952), and in *Vander Linden v. Crews,* 231 N.W.2d 904, 905 (Iowa 1975). At trial Cunha will have to introduce substantial evidence of each element of the respective counts in order to generate a fact issue on that count. But we are at the pleading stage, and these counts will respectively withstand a motion to dismiss if relief may be granted under any facts which may be shown in support of them. *Prouty v. Clayton County,* 264 N.W.2d 761, 763 (Iowa 1978). The two counts meet the test.

■ VII. *Statute of limitations.* The county argues that the claims for false arrest and imprisonment and for negligence

in counts VI and X are barred by the six-month time limitation imposed in section 613A.5 of the Iowa Code:

> Every person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 or section 613A.8 or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Failure to state time or place or circumstances or the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice.

This contention is again "speaking" in nature and involves matters outside the petition. We thus do not decide this issue.

■■■ VIII. *Exemption from liability for negligence.* The county argues finally that count X, which appears to be founded on common-law negligence, does not state a claim because of subsection (3), section 613A.4, of the Iowa Code of 1981, as amended by 1982 Iowa Acts, chapter 1018, section 4. That subsection exempts municipalities from liability for any claim

[a] based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance, or regulation is valid, or [b] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality.

A county is a "municipality" under chapter 613A. § 613A.1(1).

We will assume arguendo that the part of subsection (3) which we have marked "[a]" —"execution of a statute, ordinance, or regulation"—applies to this case. That part would not exempt a municipality for negligent execution, for it is prefaced with the words "exercising due care." The part of the subsection which we have marked "[b]" —"a discretionary function or duty"—was newly enacted in 1982 in the Iowa Acts which we have cited. It affects substantive rights and does not apply retrospectively to these occurrences. Iowa Code § 4.5 (1981).

The county's argument based on section 613A.4(3) is thus without merit. We add that the whole subject of privilege and exemption, and other facets of a negligence claim, are not before us at this time.

The result is that the county's motion to dismiss is good as to count II and as to punitive damages in count IV, and is otherwise not well taken. The county did not move to dismiss "the petition" as in *Citizens for Washington Square v. City of Davenport,* 277 N.W.2d 882 (Iowa 1979). It moved to dismiss count II and punitive damages in count IV (as well as other claims and items), and it is entitled to have count II and punitive damages in count IV dismissed. Otherwise, the district court properly overruled the motion to dismiss.

We return the case to district court for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur except LeGRAND, Senior Judge, REYNOLDSON, C.J., and HARRIS and SCHULTZ, JJ., who dissent.

LeGRAND, Senior Judge (dissenting).

In this case, the majority opinion decides it cannot address the principal question raised because that course would take the court into matters outside the petition, a

forbidden area in considering a motion to dismiss. I disagree, and I therefore dissent.

At the heart of the plaintiff's case—the postulate without which he cannot under any circumstances succeed—is whether Kossuth County can be liable in tort for the actions of its officers, agents, and employees under a rule of law first adopted some ten years after the conduct complained of. It is true these circumstances are not detailed in plaintiff's petition, but they are nevertheless properly before the court by virtue of judicial notice. We should decide now this determinative issue.

Plaintiff was convicted of first-degree murder in 1970. This court affirmed his conviction by unanimous opinion in *State v. Cunha,* 193 N.W.2d 106 (Iowa 1971). A federal district court rejected his habeas corpus petition, and this result was affirmed in *Cunha v. Brewer,* 511 F.2d 894 (8th Cir.), *cert. denied,* 423 U.S. 857, 96 S.Ct. 108, 46 L.Ed.2d 83 (1975).

Thus, Cunha's conviction for murder became final under Iowa law in 1971 and under federal law in 1975. In 1979, a *third* federal court granted plaintiff habeas corpus on the ground the evidence upon which his conviction rested was insufficient as a matter of law to support his guilt beyond a reasonable doubt. This decision in turn was based on a changed rule of evidence first announced by the Supreme Court in 1979. *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560, 567 (1979). *See State v. Robinson,* 288 N.W.2d 337 (Iowa 1980) for a discussion of the application of *Jackson* under Iowa law.

The entire history of this matter is properly before us by virtue of judicial notice. Iowa R.Civ.P. 94; *In re Drumheller Estate,* 252 Iowa 1378, 1381–82, 110 N.W.2d 833, 834–35 (1961); 87 A.L.R.2d 1233, 1236 (1963). Although the rule is different for a trial court, this court may take judicial notice of these decisions. *See Brady v. Beams,* 132 F.2d 985, 987–88 (10th Cir.1943); *Divide Creek Irrigation District v. Hollingsworth,* 72 F.2d 859, 862 (10th Cir.1934); 96 A.L.R. 937, 942 (1935).

The application of this rule seems particularly appropriate here because the circumstances are not only beyond contradiction but must be established by plaintiff himself before any cause of action can arise.

Thus, I believe the motion is properly here for decision on the merits. On that question, I am convinced the motion should have been sustained in its entirety. It is contrary to all principles of fairness and justice to hold a party civilly liable for conduct free of any impropriety when performed and subject to attack only because the criterion for conviction was changed years later. We have rejected such arguments in other cases. *Cf. Aller v. Rodgers Machinery Manufacturing Co.,* 268 N.W.2d 830, 836–37 (Iowa 1978) (negligence of manufacturer based on knowledge available at the time of manufacture, not time of injury). We should do no less here.

In summary, I believe the motion should be considered on its merits and that it should be sustained in its entirety.

REYNOLDSON, C.J., and HARRIS and SCHULTZ, JJ., join this dissent.