Wesley **AUSTIN**, Petitioner,

v.

Harold R. **SWENSON**, Warden, Respondent.

No. 74–68C(3).

United States District Court,
E. D. Missouri, E. D.

April 30, 1975.

Benjamin Roth, St. Louis, Mo., for petitioner.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., State of Missouri, Jefferson City, Mo., for respondent.

MAGISTRATE'S REVIEW AND RECOMMENDATION OF PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

WANGELIN, District Judge.

Wesley Austin seeks habeas corpus from the Missouri State Penitentiary in Jefferson City, Missouri, where he is under a twenty-five year sentence for assault with intent to kill. He was found guilty of said assault by a jury in the Circuit Court of the City of St. Louis, State of Missouri, and sentence was imposed on May 28, 1971 by the

court, since Austin had been charged under the Habitual Criminal Statute.

The respondent has confessed the petitioner's exhaustion of the available state remedies. Petitioner's conviction was affirmed by the Missouri Supreme Court, in a divided opinion, on June 19, 1973. State v. Austin, 496 S.W.2d 799.

To support his petition for habeas corpus, petitioner has set out five errors:

1. The state did not produce sufficient evidence to support a verdict of guilty.

2. That the trial court erred in admitting a picture of petitioner's brother into evidence because it was irrelevant and prejudicial.

3. That the trial court erred in refusing the petitioner an order to produce police reports.

4. That the trial court erred in refusing to permit petitioner to show that the victim wrongly identified the driver of the car involved in the crime.

5. That the trial court erred in failing to instruct the jury to disregard the victim's identification of the petitioner in a lineup.

Since much of petitioner's claim of denial of due process is based upon trial court error, and inasmuch as federal courts sitting in habeas corpus normally do not entertain claims of insufficient evidence by state convicts; it is only where the conviction is devoid of evidence, or where there is such an absence of evidence as to constitute a denial of due process that this type of claim can be aired in federal habeas corpus proceedings. Hendricks v. Swenson, 456 F. 2d 503 (8th C.A.1972). A careful analysis of the facts of the case is essential to ascertain whether or not petitioner's right to due process has been violated. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967).

The highlights of this case indicate that petitioner has been convicted of shooting a St. Louis Police Officer Schultz, who had stopped three occupants of a car. The police officer was the only eyewitness who could identify the petitioner; four other witnesses who were nearby the shooting were unable to make an identification of the assailant. During his stay in the hospital, the injured police officer indicated to other policemen that he thought his assailant may have been Leslie Austin, the brother of the petitioner. Detectives went to the home of Mrs. Pearlene Austin, the mother of Leslie and Wesley, and learned that Leslie had been in the penitentiary at the time of the commission of the crime. The detectives left the house and went to the street looking over an automobile in front of the house when a subject came from the house and identified himself as Wesley Austin, the petitioner. The officers took him to the police station and attempted to arrange to have him viewed by the victim, but were unable to do so and released the petitioner. They came back the following day and took petitioner to Deaconess Hospital and placed him in a lineup with three other men. At this point, the injured officer identified Wesley Austin, the petitioner. He subsequently made the same in-court identification.

During the trial, the wounded officer admitted that the driver of the automobile reminded him of one Janie Griffin, who was a known associate of Leslie Austin. Janie Griffin had been charged in the crime, but the charges were later *nolle prossed* by the circuit attorney.

During the trial, the facial hair of the assailant became the crux of the identification. The petitioner wore a goatee and mustache. He was denied access to a particular police report at the time of the trial, which police report allegedly did not contain that facial hair in describing the assailant. The trial court denied the admission of this requested evidence, because it was satisfied that the police report was not composed by the injured officer and, therefore, could

not be used to impeach him. This ruling was affirmed on appeal.

The facial hair came to issue at another point in the trial, when a Miss Terrell, who knew both Leslie and Wesley, testified the brothers were dissimilar in appearance. One feature she mentioned was that Leslie was clean shaven, while Wesley had a beard and mustache. The court allowed the introduction of an exhibit showing Leslie with a goatee and mustache to impeach Miss Terrell. Petitioner complains of the introduction of this exhibit as being not properly founded.

Further, petitioner was denied the right to show that Officer Schultz had made a tentative identification of Janie Griffin, whose case had been *nolle prossed,* as aforementioned.

Does this combination of trial events, the denial of the exposure of the original police report to the jury, the allowing of the old photograph of petitioner's brother to be introduced and the failure of the court to allow petitioner to show Officer Schultz's misidentification of Janie Griffin and Leslie Austin, cumulate to amount to a denial of due process, or are they discretionary court actions or harmless errors, as found by the Missouri Supreme Court?

This is a serious crime. Austin, who has adamantly denied his guilt throughout all of these proceedings, is faced with twenty-five years imprisonment in the prime of his life. A criminal trial is not some kind of game wherein the state should attempt to outwit or snare its victim. An inscription on the walls of the Department of Justice in Washington states the proposition candidly for the federal domain:

"The United States wins its point whenever justice is done its citizens in the courts."

So too, then, the state's pursuit should be justice, not a victim. The state and the government clearly have a duty; if one has in its possession specific, concrete evidence which is not merely accumulative or embellishing and which may exculpate the defendant or be of material importance to his defense—both the state and the government are obliged to bring this to the attention of the court and the defense. One cannot reconcile the withholding of important, material, exculpatory evidence with the concept of a fair trial and due process of law.

This District Court ordered an evidentiary hearing which was held on November 7, 1974. Petitioner appeared with his attorney and his twin brother. The respondent was represented by the Assistant Attorney General of Missouri and the Assistant Circuit Attorney who prosecuted the case. During the course of the hearing, a fifty-four page compiled police report was produced and introduced as petitioner's Exhibit No. 1. Page 3 of this report indicates that a foreign made automatic pistol, which had apparently been taken from a grocery store holdup fifteen minutes prior to the instant shooting, was found at the scene of the shooting. Gotz, the owner of the heldup grocery store, could not identify the petitioner Austin as the robber, but said the pistol was similar to the one taken from him, (P–31). On Page 20 of said police report, one Leroy Harvey stated that he was in the company of Vernell Thomas and Perry Pitchford when they shot Detective Schultz.

Harvey gave a rather thorough confession, describing the movements of the three which coincided somewhat accurately with the actual shooting, especially at to the time of the shooting and the type of automobile used. Harvey was identified by two of the shooting witnesses as "looking like" one of the men who ran after the shooting of Schultz. The resultant actions, if any, by the police and prosecutors toward this confession were never explained to this Court. At the hearing, the District Judge noted that the Austins were fraternal, but not identical twins.

Therefore, the problems that suggested themselves prior to the evidentiary

hearing, became even more troublesome after the hearing. A study of the composite police report made in this case that was revealed at the evidentiary hearing, clearly indicated that one Harvey admitted this same crime. He gave the police a detailed description of the movements of himself and his accomplices with accuracy and detail that cannot be ignored.

One of the Missouri Supreme Court Judges, who reviewed the appeal of this case, made observations in his dissent that were worthy of note, State v. Austin, 496 S.W.2d 799, 806:

"Three disinterested eyewitnesses were unable to identify Wesley (Austin) as the man involved. There were no corroborating witnesses, no confessions, no admissions, no weapon, no fingerprints, no suspicious loot, no license numbers traced. The identification by Detective Schultz was the sole evidence of guilt. It is a 'one versus one situation'. Defendant's demeanor showed no guilt, in fact the contrary. When the detectives came to the house looking for Leslie (Austin), they were not even aware of Wesley. Wesley overheard their conversation and voluntarily came outside to the parked car the detectives were checking. The detectives then took him to be viewed by Schultz, but Schultz was not up to it, so they released Wesley without charge. Then next morning they went back to Wesley's mother's house and Wesley was still there. These are not the actions of a guilty man, particularly one who has shot a policeman."

At the trial of the petitioner, his counsel subpoenaed all police reports of the incident, (T–46). Detective Schultz originally identified Leslie Austin, the brother of petitioner, as his assailant, (T–56). At the time of the trial, Detective Schultz told a superior, Lieutenant Richter, that the subject who shot him reminded him of a man he arrested by the name of Vernell Thomas, (T–98).

In a lineup prior to trial and in the trial itself, Schultz identified Wesley Austin, the petitioner, who became the third man that Schultz identified in some fashion or another.

At the trial, defense counsel made detailed demand for the police reports, (T–143–147). The court denied this request, apparently without examining the reports in question. The defense counsel again moved for examination of the reports and was denied same, (T–178).

We are mindful that at the time of the trial of this particular case, there was no general right of discovery in criminal cases in the State of Missouri. Cannon v. State, 332 F.Supp. 23 (E.D. Mo.1971). We further recognize the settled law that the sufficiency of the evidence to support a state conviction raises no federal constitutional question and cannot be considered in a federal habeas corpus proceeding by a state prisoner. Hendricks v. Swenson, 456 F. 2d 503 (8th C.A.1972); Cunha v. Brewer, 511 F.2d 894 (8th C.A.).

The problem presented here is whether the failure to admit in evidence the police reports in question, became so prejudicial as to constitute a denial of due process, which require federal court intervention. The State of Missouri has had adequate opportunity to produce the victim of this crime, who was steadfast in his identity of petitioner. However, petitioner did not have the opportunity at trial time, to get into evidence certain police reports which at least, dull the officer's identification and possibly furnish exculpatory material which reaches the Giles and Brady, supra, standards.

It is not clear from examination of the transcript and pleadings, as to whether or not the trial court ever saw the police reports that have been described and which were presented at the federal court evidentiary hearing. Petitioner, in his application for habeas corpus, states that he has not heretofore filed any motion to vacate, set aside or correct his sentence under Missouri Supreme Court Rule 27.26, V.A.M.R.

The resolution of this sticky problem has not been easy. The reports introduced at the federal evidentiary hearing create at least a doubt as to whether or not they are exculpatory in nature. It is our conclusion that the police reports, considered in the context of the record as we see it, raise sufficient question concerning constitutional issues. We feel the trial court should decide whether or not there was a duty to disclose the contents of these reports which were in the possession of the state prosecutor. This court feels that the petitioner should raise this question in the Missouri courts, via their Supreme Court Rule 27.26. The State court might find the additional evidence developed demonstrates prejudice to a degree necessary to warrant a new trial. And, although relief may ultimately be denied, at least the state courts should have the opportunity to decide in the first instance consistent with the state-federal comity. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962).

"The truism that our federal system entrusts the states with primary responsibility in the criminal area means more than merely 'hands off'. The states are bound by the Constitution's relevant commands, but they are not limited by them. We therefore should not operate under the assumption—especially inappropriate in Maryland's case in light of its demonstrated concern to afford post-conviction relief paralleling that which may be afforded by federal courts in habeas corpus proceedings—that state courts would not be concerned to reconsider a case in light of evidence such as we have here. Particularly where the result may avoid unnecessary constitutional adjudication and minimize federal-state tensions." Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1966).

It is then therefore, the recommendation of the United States Magistrate that the Missouri Courts be given another opportunity to consider petitioner's claims, especially in view of the police reports that were developed at the federal evidentiary hearing, and that petitioner seek this new review, via Missouri Supreme Court Rule 27.26. This, of course, does not preclude the Federal District Court's right to review a federal habeas corpus application again, if petitioner is unsuccessful before the state courts. United States ex rel. Bagley v. LaVallee, 332 F.2d 890 (2nd C.A.1964).